JOHN WILLIAMS V. THE STATE.

No. 6244. Decided November 9, 1921.

Rehearing denied December 21, 1921.

**1.—Murder—Malice—Charge of Court—Question of Fact.**

Where, upon trial of murder, the defendant contended that he went to the premises of deceased unarmed, upon the invitation of deceased's father, upon a peaceful mission and for a lawful purpose, and that the manner in which the homicide took place, etc., excluded the theory of malice as a matter of law, *held*: that this was a question of fact for the jury, and it was not necessary for the jury to believe that the defendant had the intent to kill the deceased when he went to his home, for he might have formed malice after he reached the same. Following McCoy v. State, 25 Texas, 37, and other cases.

**2.—Same—Question of Fact—Malice—Adequate Cause—Charge of Court.**

Where, upon trial of murder, the defendant contended that the evidence did not raise the issue of murder and malice, but there was testimony from which malice could be inferred, the question was one of fact for the jury, as to whether adequate cause existed or not. Following Doss v. State, 43 Texas Crim. Rep., 551; and where the court submitted the proper charge and defendant was found guilty of murder there was no reversible error.

**3.—Same—Rehearing—Malice—Manslaughter—Question for Jury.**

Where, upon trial of murder and conviction of that offense, the record showed that all of the witnesses except defendant testified to the fact that deceased was trying to make his escape from defendant who pursued and shot him, thus causing his death, the jury were justified in concluding that malice aforethought appeared from the evidence, even without testimony as to former differences between the parties. Malice requires no specific length of time for its generation or growth, but may arise at any instant.

Appeal from the District Court of Gregg. Tried below before the Honorable Chas. L. Brachfield.

Appeal from a conviction of murder; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*F. J. McCord, J. N. Campbell,* and *R. S. Wyche,* for appellant.—Cited cases in opinion.

*R. H. Hamilton,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—Conviction is for murder; punishment fixed at confinement in the penitentiary for a period of seven years.

It is insisted that the court erred in submitting the issue of murder and claimed that no evidence supports a higher degree of homicide than manslaughter.

Appellant was the owner of a farm. Alex Stevens was a tenant. Judge Stevens, the deceased, was the son of Alex Stevens and resided with him. Appellant shot and killed Judge Stevens at the home of his father. The eyewitnesses were Alex Stevens and Richard Denson.

According to Denson, when appellant arrived, Alex Stevens had gone for some water. Deceased was cutting wood. Appellant spoke first and told the deceased that he thought he was going to cut some posts as he had promised to do. The deceased replied that he was cutting wood and did not intend to cut posts, whereupon the appellant remarked that he would get some one there that would do so, when deceased cursed appellant, who told him not to do so, accompanying his words with a motion indicating that he would pick up something. Deceased wheeled and went into the house and got his gun. His father, approaching, hollered to him not to get his gun, and when the deceased appeared with it, appellant grabbed it. The witness ran around the house and later saw the deceased run and appellant following him. He saw the deceased look around, heard the report of a gun, and saw the deceased fall. At the time he was shot, the deceased was running.

Alex Stevens' description of the main facts, in substance, coincide with that of Denson. He also said that when the deceased came out of the house with the gun, he (the witness) took hold of him; that appellant was some ten or twelve steps distant, and that while he was contending with his son, the appellant rushed up and snatched the gun out of his hand, and the boy ran toward the south around the west end of the house. Williams ran after him, and on reaching the west end of the house, he fired, the distance between them being about sixteen steps. The deceased was struck in the face and died in about an hour.

The appellant testified that before going to the scene of the homicide, he was requested to do so by Alex Stevens, who said that he was not progressing with his work because his son would not help him and asked the appellant to come and see him; that there had been a previous promise to cut some posts; that on reaching the premises, he engaged in a conversation with the deceased, who finally began to curse him and said: "I have been wanting to kill you, and I will just kill you;" and ran and got his gun; that his father, who was approaching, hollered and tried to stop him; that the deceased leveled the gun at appellant before the old man arrived at the house, while he was approaching with the water; that he undertook to get around the corner of the

house and deceased came after him, when he grabbed the gun and en-
gaged in a scuffle, in which the father took part, and said:

"Me and Uncle Alex and Judge were all scuffling, and if Judge run
I didn't see him. I didn't know anything else until the gun fired. So
Uncle Alex ran on me for the gun, but I never turned the gun loose and
I wheeled and went off and by the time I got half way between my
house and where Uncle Alex Stevens lived, I heard him say: 'Judge is
dead.' "

There was some evidence about measurements and about the loca-
tion of objects bearing upon the ability of the witnesses to see what took
place. We regard it as simply bearing on any conflict in the evidence
concerning the incidents immediately attending the homicide, and not
as raising any question of law.

Counsel takes the position that upon the undisputed evidence, the
appellant went to the premises unarmed, upon the invitation of the de-
ceased's father, upon a peaceful mission and for a lawful purpose, and
that the manner in which the homicide took place and the facts imme-
diately preceding it excluded the theory of malice, as a matter of law.
Granting that there was evidence which might have reduced the grade
of the offense to manslaughter, whether it did so would depend upon
the condition of appellant's mind; necessarily a question of fact. There
was some evidence of a previous difficulty antedating the homicide
some months. To characterize the case as murder, it would not be
necessary that the jury believe that the appellant had the intent to
kill the deceased when he went to the home of Alex Stevens. He might,
at any time, thereafter have formed the intent and be guilty of mur-
der unless, at the time, his mind, from an adequate cause, was in a
state rendering him incapable of cool reflection. This principle is il-
lustrated in the case of McCoy v. State, 25 Texas Rep., 37, which is
cited by the appellant. See, also, Jones v. State, 29 Texas Crim.
App., 340; Farrer v. State, 42 Texas Rep., 265; Atkinson v. State, 20
Texas Rep., 52; Duebbe v. State, 1 Texas Crim. App., 159.

We are referred by the appellant to West v. State, 2 Texas Crim.
App.. 460; Moffatt v. State, 35 Texas Crim. Rep., 257, 33 S. W. Rep.,
344; Mason v. State, 72 Texas Crim. Rep., 501, 163 S. W. Rep.,
66; Burton v. State, 77 Texas Crim. Rep., 314, 178 S. W. Rep., 334.
These cases each pertinently support the proposition that if, under the
facts in the instant case, the court had failed to charge upon the law
cf manslaughter, it would have been in error, but as we comprehend
them, none of them support the contention urged by the appellant that
it was the duty of the court to omit from the charge the issue of mur-
der. The facts in evidence may have been such as justified the jury
in concluding that adequate cause existed. This was a question for the
jury, and the effect of proof of adequate cause, upon the mind of the
accused was a question of fact. The jury must decide whether there
was adequate cause for passion and whether the passion existed and
whether it rendered the mind incapable of cool reflection. Such is the

statute, Article 1137 of the Penal Code, which says, in substance, that in order to reduce a voluntary homicide to the grade of manslaughter, it is necessary that not only adequate cause exist but it must produce passion as described by the statute rendering the mind incapable of cool reflection. Such has been the construction in Branch's Ann. Texas Penal Code, Sec. 2029 and cases listed; also, Sec. 2002. If there be an exception to this rule (see Doss v. State, 43 Texas Crim. Rep., 551), the case before us is not within it.

The state of appellant's mind at the time he formed the design to kill was a question of fact and not of law. In its charge, the court informed the jury concerning the law in a manner to which there is addressed no complaint. We believe that we would not be warranted in holding that there was no evidence upon which to predicate the charge upon murder or that the evidence in the record was not adequate to support the conviction for that offense.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

December 21, 1921.

LATTIMORE, JUDGE.—It is very earnestly insisted in this case that we erred in holding the evidence sufficient to sustain the judgment, the principal ground of such insistence being that the transaction involving the homicide arose apparently without any evil purpose on the part of appellant, and that the events moved so swiftly that the conclusion that he was actuated by malice aforethought in what he did, would not be supported by the testimony. It is also urged that the conclusion that deceased was running away from appellant when the shooting took place, was not sustained because of the fact that the witnesses testified that the deceased was shot in the face. The record discloses the testimony of three eyewitnesses, and an examination of one of them reveals the fact that he testified both on direct and cross-examination that as deceased was fleeing from appellant, he looked back and just as he looked back appellant fired. This would fully account for the fact that deceased was shot in the face. All of the witnesses besides appellant testified to the fact that deceased was trying to make his escape from appellant who pursued and shot him, thus causing his death. We think the facts justified the jury in concluding malice aforethought to have appeared from the evidence. Without discussing the question of former differences and some feeling manifested between deceased and appellant, the evidence, aside from that of appellant himself, showed that just prior to the killing and because of sharp words between himself and appellant, deceased went into his house and got his gun and came out; that when he reached the outside of said house deceased was grappled by his

father who endeavored to take the gun away from him; that while deceased and his father were scuffling over the gun appellant approached and himself snatched the gun away; that when this occurred deceased ran and was pursued by appellant and shot as he was trying to make his escape. It is so well settled by the decisions of this court that malice requires no specific length of time for its germination or growth, and that it can arise any instant, that we are not inclined to discuss or further speculate upon a matter that was fairly submitted to the jury and by them decided adversely to appellant's contention. We have examined the authorities submitted by able counsel for appellant in his supplemental argument in support of his motion for rehearing, but are unable to find anything in them contrary to what we have above expressed, and the motion will be overruled.

*Overruled.*