### SIMPSON v. STATE.    (No. 8703.)

(Court of Criminal Appeals of Texas.    March 4, 1925.)

**1. Homicide ⟜250—Conviction for murder supported by sufficient evidence.**

Evidence *held* to support conviction for murder.

**2. Homicide ⟜269—State of mind of accused in committing homicide, for jury.**

In what state of mind accused committed homicide is a question of fact for jury under the evidence.

**3. Homicide ⟜39 — Killing resulting from shots fired under sudden passion is manslaughter.**

Where shots are fired under sudden passion arising from adequate cause rendering mind incapable of cool reflection, killing will be only manslaughter.

**4. Homicide ⟜332(6)—Verdict of murder will not be overturned where supported.**

Where there is evidence to support verdict of murder, which verdict was sanctioned by trial judge, court will not invade province of jury by overturning it.

**5. Homicide ⟜146 — Requirement of malice sufficiently satisfied by implication.**

Where accused was shown to have killed deceased, and jury declined to acquit on ground of self-defense, or sanction theory of sudden passion reducing crime to manslaughter, requirement of malice *held* satisfied under rule that malice will be implied where killing is not otherwise explained.

Appeal from District Court, Robertson County; W. C. Davis, Judge.

Will Simpson was convicted of murder, and he appeals. Affirmed.

Lamar Bethea and J. R. Astin, both of Bryan, and Robert B. Allen, of Dallas, for appellant.

Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

MORROW, P. J. The offense is murder; punishment fixed at confinement in the penitentiary for a period of seven years.

Appellant's theory, coming from his own testimony is this: George Simpson, appellant's brother, and Ed Harris, a brother of the deceased, Mack Harris, were engaged in a game, and the appellant was similarly engaged with other parties a few feet distant. His attention was first attracted by loud curse words, and some one said: "I will cut your throat." A shot was immediately fired. Upon going to the scene and approaching his brother, he saw him on the ground. Both Ed Harris and Mack Harris were holding him. The latter was astride him. George Simpson said: "I am shot." Appellant said: "Turn him loose." Ed Harris replied: "He may hurt me." Appellant then said: "No, he will not hurt you." He then fired three times at Mack Harris in order to save his brother's life. He saw a knife picked up. He knew that George Simpson had a pistol. He carried a pistol "because he did not know what might happen." He left the scene without knowing that he had killed a man.

According to George Simpson, a controversy arose between him and Ed Harris touching the ownership of a small sum of money. Harris became enraged, made a demonstration, and said he would cut Simpson's throat. Mack Harris then shoved George Simpson down and shot him, inflicting a slight wound. Ed Harris at the same time was attacking George Simpson with a drawn knife. The first shot was fired by Mack Harris from behind. The witness did not see the appellant at the time and did not know who fired the other shots. After the firing the appellant came and asked Ed Harris to release the witness George Simpson. Harris said: "Don't let George hurt me." Appellant replied: "He ain't going to hurt you." At that time the witness was not aware that Mack Harris or any one else had been killed.

Other witnesses who were present gave some corroborative testimony, though they seem to have been frightened away by the encounter and to have seen but little of it. One of them said that at the beginning of the quarrel Ed Harris pitched some money to George Simpson and said:

"I don't want to kill a man. I haven't got nothing but a pocketknife, and you have a pistol, but I will take my knife and take you on."

The fight followed. The knife belonging to Ed Harris was picked up at the scene of the difficulty.

Appellant proved a good reputation for peace and quietude. There was testimony that the deceased was a man of violence.

Two witnesses testified that on the morning after the homicide appellant said that he did not do the shooting. He was positive in his denial and said that he was sitting at a distance of some 15 or 20 feet from the

affray; that he did not know who shot Mack Harris. To one of these witnesses he denied the shooting and said: "God knows I never killed Mack Harris."

The state's theory coming from Ed Harris and others was that while George Simpson and Ed Harris were gambling, a dispute arose over a small sum of money. Harris got the money, and Simpson drew his pistol from his bosom, whereupon Harris seized him. Harris looked around and saw the appellant point his pistol at him. The pistol was fired as the witness jerked his head back, and he was powder burned. He fell back on the ground, pulling George Simpson on top of him and calling for help. He held Simpson until the firing of the last shot. While Harris was in that position, he heard three shots fired. At the beginning of the affray, the appellant was some eight feet distant playing at a game. According to Ed Harris, the deceased was not engaged in the difficulty.

According to the witness Clayton, he was standing near the game in which George Simpson and Ed Harris were engaged. The appellant was engaged in another game some three or four feet distant. A squabble took place about the money, and George Simpson jumped up as though he was going to get his pistol, and Ed Harris grabbed him and pulled him down. The appellant walked around and fired three shots. Speaking of the appellant, the witness said:

"He shot Mack Harris. I saw him when he shot Mack. I did not see Mack do anything."

Appellant told Ed Harris to turn George Simpson loose, and Harris said he would not do so until George was disarmed. Appellant then shot at Ed Harris, and the bullet struck George in the jumper sleeve. On cross-examination the witness said:

"I was looking right at the gun when he shot. He shot three times. * * * When Ed grabbed George and pulled him over, appellant had shot three times before that. He shot Mack first. * * * Will fired four shots, three times at Mack and one shot at Ed, and shot George in the jumper sleeve."

The deceased received three gunshot wounds between the shoulder blade and the neck. He was killed at once.

Appellant's pistol was exhibited to the jury, also cartridges which would fit it. There was testimony to the effect that the wounds were inflicted by cartridges of a caliber like those found in the pistol.

No effort has been made to give in detail all the testimony, but only such synopsis of it as illustrates the conflicting theories.

Previous to the difficulty, the parties were all friendly.

Appellant takes the position that the evidence excludes the theory of murder. If his testimony was believed by the jury, doubtless either a manslaughter verdict or an acquittal would have been the result of the trial. In view of a different result, it must be assumed in support of the verdict that the points of conflict were resolved in favor of the state. If the state's evidence is sufficient to support the verdict of murder, this court would not be warranted in reversing the judgment upon the ground stated.

[1] From the testimony of Ed Harris and the state's witness Clayton, the jury would have been authorized to find that in the fight between Ed Harris and George Simpson, the latter was the aggressor. Appellant admittedly was a few feet away and knew that his brother George was armed with a pistol. If the state's witnesses are to be believed, with this knowledge he entered into the conflict and fired the first shot at Ed Harris, and then with three more shots he killed the deceased, who was not engaged in the struggle between Ed Harris and George Simpson, the conviction of murder was not unsupported.

The appellant's theory that the deceased was killed while he was astride George Simpson who was engaged in the struggle with Ed Harris is weakened by the testimony showing that after the fight he claimed that he did not shoot the deceased.

[2-4] Accepting the state's testimony, the privilege of the jury to reject the theory of self-defense or the defense of his brother is obvious. In what state of mind the appellant fired the fatal shots was, under the evidence, a question of fact to be solved by the jury. If the shots were fired under a sudden passion arising from an adequate cause, rendering the mind of the appellant incapable of cool reflection, the offense would have been no more than manslaughter. Under instructions from the court, the jury understood this at the time the verdict was rendered. The verdict rejects the theory that the shots were fired under a state of mind which rendered the appellant incapable of cool reflection, and for this court to overturn a verdict which has the sanction of the trial judge would be an invasion of the province of the jury. Many precedents upon the subject are cited in Branch's Ann. Tex. P. C. §§ 2002 and 2029. A recent case reviewing them is Williams v. State, 90 Tex. Cr. R. 451, 235 S. W. 594.

[5] The jury having upon conflicting evidence declined to acquit on the ground of self-defense or to sanction the idea of a sudden passion rendering the appellant incapable of cool reflection, and having found upon sufficient evidence that he shot and killed the deceased, the law demanding proof of malice, according to the understanding of this court, was satisfied. When, by proof, the homicide is brought home to the accused and not otherwise explained, malice is implied. To this effect the precedents are conclusive. See Wheeler v. State, 54 Tex. Cr. R. 51, 111 S. W. 1022; Potts v. State, 56 Tex. Cr. R.

44, 118 S. W. 535; Farrer v. State, 42 Tex. 271; and numerous decisions collated in Branch's Ann. Tex. P. C. § 2065. See, also, Williams v. State, supra.

The judgment is affirmed.