# NOVEMBER 8, 1944

## SAM ADAMS V. THE STATE.

No. 22883. Delivered June 7, 1944.
Rehearing Denied June 23, 1944.
Appealed to Supreme Court of the United States.
Mandate of the Supreme Court of the United States, denying petition for a
Writ of Certiorari, filed November 11, 1944.

The opinion states the case.

*Ronald Smallwood,* of Harlingen, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of murder with malice, and assessed a punishment of ten years in the penitentiary.

There are no bills of exceptions in the record, and the only insistence of appellant is that the evidence fails to show the presence of malice, and therefore the trial court should not have instructed the jury on murder with malice.

The facts show that in the city of Harlingen, Texas, Mr. Patty was engaged in the plumbing business, and had such a shop fronting on a street in said city; that he also had his living quarters in this shop. The city jail was located about three blocks from this shop. On the night of July 11, 1943, Mr. Patty was asleep, and about 11 o'clock he was awakened by a noise out in front of the shop. He arose and ran out in front of the shop and there found that a Buick car had crashed into Patty's pick-up, which was parked in front of the shop; and he there found appellant who was walking around the two badly wrecked cars, and seemed to be mumbling to himself. Mr. Patty, being barefooted, stuck some glass in his feet, and he returned to the shop, put on his shoes and came back to the wreck. Jay McCoy, who was the city jailer and a policeman, evidently heard the crash at the jail and he and his son came upon the scene and had some conversation with appellant, who is a negro. Upon being accosted by Patty appellant said: "that car is parked wrong," referring to the pick-up of Mr. Patty's, which proposition Patty denied. Then appellant spoke to one of the McCoys and said again: "See there, that car is parked wrong," and when they failed to agree with him, he said: "The reason you side against me is because I have a black face." After Jay McCoy had looked the situation over, he said to appellant: "That car was not parked wrong." Mr. Jay McCoy seemed to have been unarmed at such time, and when he made this statement appellant cursed him, and struck at him, and they exchanged blows, some witnesses saying appellant struck the first blow; prior to this time appellant had been seen to put his hand in his pocket, and a knife was afterwards found near the scene, under a car, by a member of the military police, the blade of which was 4 3/8 inches long and the handle about 4 1/2 inches, or an overall length of about 8 5/8 inches. Witnesses saw appellant going into his pocket prior to the time of or during the argument between himself and Jay McCoy as to the parked car's

position. In the ensuing fight, the testimony becomes confusing as to who struck the first blow and as to how many blows were struck, but it does show that in a short time Jay McCoy fell down and said "I am badly hurt," and soon died from a stab wound in the left leg or groin which severed an artery, he also having received a cut in his right hand. Buck McCoy, the deceased's son, then entered the fight, and appellant finally suffered a severe mauling at Buck McCoy's hands, who had to be restrained because, as he said, "he killed my daddy."

At first appellant denied the ownership of this knife, but finally, in a way, admitted that it looked like one he had, and possibly was his knife. The undertaker testified that there was a wound, about an inch and a half gash, in the left leg in the groin, and this wound severed the iliac artery and cut the vein also; it went straight in; this was such a wound as would and did cause the death of Mr. McCoy; it caused the loss of a great deal of blood. It would not have been possible to have saved this man's life with that artery severed and the vein cut; one would die in from two to five minutes.

Appellant's version of what happened is different from that above stated. He claimed that upon the happening of the accident he got out and inspected the cars; that Mr. Patty came up to the wreck, and soon Jay McCoy and his son Buck came up, and appellant said he had an accident, and asked Jay McCoy if that car was not parked wrong; the answer being "No, it wasn't; you were wrong," and that appellant said he thought it was parked wrong, at which time one of the men cursed appellant and hit him, and they went to fighting; this man cursed appellant "for a black s - of - b," and said he was going to arrest him, and they went to fighting. He remembered nothing about the knife.

Malice may be either express or implied, and in the absence of malice of either kind, and failing to have present self-defense, we would have to say herein that as a matter of law we have here presented a case of adequate cause which rendered the mind incapable of cool reflection.

In a well considered charge the court submitted to the jury murder without malice, murder with malice, self-defense, provoking the difficulty, and its converse, as well as an act done while unconscious, and there were no objections or exceptions to the charge.

It is true that the appellant's testimony might have justified the jury in finding a verdict of murder without malice, but it is also true that the State's testimony will support a verdict of murder with malice. This matter was submitted to the jury under appropriate instruction, and we do not think that we should disturb their verdict thereunder.

The judgment will therefore be affirmed.

### ON MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists that the facts are insufficient as a matter of law to show a killing upon malice aforethought, and that we erred in reaching a contrary conclusion. He relies upon the cases of Ely v. State, 139 Tex. Cr. R. 520, 141 S. W. (2d) 626, and Parks v. State, 131 Tex. Cr. R. 464, 99 S. W. (2d) 943, as supporting his contention.

In the Ely case, the killing occurred as a result of, and in connection with, an illegal arrest. No such situation is presented in the instant case. In the Parks case, the killing occurred only after the accused "had been knocked down twice and was again being attacked by the deceased at the time the shots were fired. Appellant had made no effort to draw his pistol until deceased attacked him the third time." No such facts exist in this case. The Ely and Parks cases are deemed neither applicable nor controlling here.

In the instant case, State's witnesses testified that, immediately before appellant began the fatal attack, he was heard to say, in effect, that the reason deceased did not agree with him in his contention that the car was parked wrong was because he (appellant) had a "black face." This, together with the other facts and circumstances, warranted the jury's conclusion that the killing was upon malice aforethought.

It must be remembered that malice may be formed immediately before an act is committed and can arise instantly. McClellan v. State, 118 Tex. Cr. R. 473, 40 S. W. (2d) 87; Williams v. State, 90 Tex. Cr. R. 451, 235 S. W. 594.

We remain convinced that the facts authorized the jury's conclusion that appellant killed deceased with malice aforethought.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.