## J. F. McNEILL v. The State.

No. 16934. Delivered January 9, 1935.
Rehearing Denied March 27, 1935.

The opinion states the case.

*T. L. Tyson,* of Franklin, and *D. L. Harry,* of Farmersville, for appellant.

*John R. Grace,* County Attorney, and *Bush & Parten,* all of Franklin, and *Lloyd W. Davidson,* State's Atty., of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for forty years.

The State predicates a motion to dismiss the appeal on the ground that pending such appeal appellant escaped from the custody of the sheriff. In view of the showing made by appellant, and the fact that he is yet in custody, we have concluded that the motion to dismiss should be overruled. See Leonard v. State, 109 S. W., 149.

Libby McNeill, deceased, was the wife of appellant. She weighed about 130 pounds. It was uncontroverted that on the 28th of November, 1933, appellant attacked deceased with a hickory stick 4½ feet long and 1 inch in diameter, weighing three or four pounds. A witness for the State testified that he was in the vicinity of appellant's home when he "heard an awful racket coming from the direction of the house." He heard loud talking and recognized appellant's voice. He heard appellant say "I will make you hear me." He also heard cursing. We quote from his testimony: "I recognized his (appellant's) voice. I could hear cursing but couldn't tell much about it. Yes I heard a woman's voice. It sounded like she was begging him to quit beating her; that he was killing her. I heard her say 'Stop beating me.' She said 'Stop beating me. You are killing me.' I heard plenty of licks—plenty of beating. * * * That commotion I heard lasted quite a long while. * * *"

The ten-year-old son of appellant and deceased identified the hickory stick to which we have referred and testified as follows:

"I have seen this stick before. I saw it at home. I have seen my father with this stick. I saw him whipping my mama with the stick. I remember when mama got sick and went to bed. I remember my papa whipping my mama about a day before she went to bed one morning. I saw him whip her. He whipped my mama with this stick about three weeks before she died. He whipped her most where he could hit her. They were in the house. It was in the morning before I went to school. He hit her several times with this stick. I can't tell you where all he hit her. He hit her about the ribs, about there (indicating). I was in the house when this happened, as were also my little brothers and sisters. We were all in the house. When papa was whipping her she said, 'Oh dear, stop, stop.' She asked him to stop. Papa didn't say anything when he whipped her. My mama run when papa whipped her. She did not fall down. She ran out the door and papa followed her. He did not hit her after they went out doors. After this whipping my daddy gave my mama it was about two or three days before she went to bed and got sick. She never got up after that."

The witness testified, further, that about a week before appellant whipped deceased he (appellant) ran deceased out of the house at the point of a gun, saying to her, "G—d—you old b— I will shoot you." Again, the witness testified that one of the scars on the head of his mother resulted from the action

of appellant in striking her with an "old wagon bow." Deceased was confined to her bed within two days after appellant attacked her, where she remained until her death on the 9th of December, 1933. On the date last mentioned Dr. W. M. Boguskie examined the body of deceased and performed an autopsy. He found on the right temple a small wound about the size of a dime which had healed but was of recent origin. He found a bruise on the anterior portion of the chest on the right side. He also found other bruises about the size of a half-dollar on the chest. There was a bruise over the right lung. Making an incision, he exposed the right lung and discovered that it had been ruptured. The rupture was approximately three inches long on the anterior portion and a little more than a quarter of an inch in depth. The witness testified that deceased had had traumatic lobar pneumonia, caused by a wound. He further testified as follows: "The primary cause of her death in my opinion was the rupture of the lung, secondarily followed by pneumonia. It is my opinion that the pneumonia was produced directly by and from the wound to her lung. The wound on the lower and upper edges showed some evidences of uniting together, and that place to my mind was about twelve or fourteen days old."

Examining the stick which it was shown appellant used in beating deceased, the witness testified as follows: "With a stick the size of this and used on the side part of a woman over the lung or in the region of the lung upon the right-hand side, in the hands of a man of the size and physical appearance of Mr. J. F. McNeill (appellant) would produce death. It could have produced such a wound on the anterior portion of the body in the hands of Mr. McNeill, or a man of his size, weight and physical condition. I believe it could have produced trauma or break in the lung applied to the anterior portion of the body over the lung or in the region of the lung. It was an unusual wound and I studied a good bit about what could have produced it, and I expect that could have, yes. I will say that wound in the lung was produced by an external force, I don't know what external force, but it was very evidently produced by external force. This stick in the hands of a man of the size and physical condition Mr. McNeill appears to be, when used by him on a person of the kind, character and size of Mrs. McNeill would be a deadly weapon if used upon some vital portion of her body."

The nurse who attended deceased approximately a week and who was with her when she died, was present when the

autopsy was performed. Her testimony corroborated that of Dr. Boguskie as to the lung being ruptured. Within two and one-half hours before she died, deceased said to appellant, "Oh daddy, I do beg you not to murder no one else this way." The attending physician who first waited on deceased testified to bruises being upon both sides. His testimony was to the further effect that deceased had pneumonia during the time he was treating her.

Appellant did not testify in his own behalf. He introduced physicians who testified that in their opinion the lung of deceased could not have been injured in the manner testified to by Dr. Boguskie in the absence of an injury to the ribs. It appears that none of the ribs were broken. Further there was testimony to the effect that appellant had some guns in the house at the time he beat deceased. When deceased became ill appellant procured a nurse and medical attendants. He prayed for the recovery of his wife.

We have not been favored with a brief by appellant. We take it, however, that it was his chief contention in the trial court, as shown in one of his exceptions to the charge, that the evidence was insufficient to show an intent to kill. In Walker v. State, 251 S. W., 235, which was decided prior to the repeal of the statute defining manslaughter, Judge Lattimore, speaking for the court, used language as follows: "If one, not in self-defense, and not under circumstances reducing to mansluaghter, assault another, and death ensue, and it be contended that the weapon used was not deadly, and that the intent to kill was lacking, these still are fact issues for the jury under appropriate instructions." We are unable to reach the conclusion that appellant's contention should be sustained. Approximately two weeks prior to attacking deceased with a stick, appellant had run her out of the house at the point of a pistol, threatening at the time to shoot her. He had assaulted her on another occasion, and during the present transaction, beat her with a weapon which the proof showed was calculated to produce death in the manner in which it was used. The trial judge approximately advised the jury in the charge to acquit appellant of murder if they entertained a reasonable doubt as to whether he intended to kill deceased. Moreover, an adequate and proper charge on the law of aggravated assault was submitted.

Bill of exception No. 3 is concerned with appellant's objection to the testimony of Dr. Boguskie touching the result of the autopsy he performed. The grounds of the objection were

that the physician had not been authorized by appellant to enter his home and perform such autopsy; was not an official authorized by law to hold an inquest; and was not acting under any order of a court or magistrate. The examination was made in the presence of the brother and sister of deceased and without any objection on the part of appellant or anyone else. Under the circumstances, we are unable to reach the conclusion that the trial court was in error in receiving the testimony in question.

Bill of exception No. 5 relates to appellant's objection to the testimony of a witness to the effect that during the last illness of deceased, appellant's children were sent to his home to be taken care of. The bill is qualified by the trial judge to the effect that appellant's counsel had, on cross-examination of the witness, attempted to show that he was prejudiced against appellant and anxious to see him convicted, and further, had tried to show by the witness that his family and that of appellant did not visit. The qualification states further that it was upon redirect-examination that the evidence in question was adduced. Under the circumstances, we are unable to reach the conclusion that the bill reflects error.

Bill of exception No. 10 recites that a witness for the State testified that shortly before her death, deceased said to appellant: "Oh daddy, I do beg you not to murder no one else in this way." We think this testimony was admissible. Appellant was not under arrest. The declaration of deceased was in the nature of an accusation. She, in effect, charged appellant with having murdered her. Appelllant understood the statement. It called for a reply. Hence it was proper to show his silence and acquiescence as a confession. See sec. 64, Branch's Annotated Penal Code; Rice v. State, 49 Texas Crim. Rep., 569, 576; Knight v. State, 144 S. W., 967.

Bill of exception No. 22 shows that deceased's sister testified that deceased stated to her that her paleness was due to the fact that she had lost so much blood. The court sustained appellant's objection to the testimony and instructed the jury to disregard it. In qualifying the bill of exception, the court shows that appellant had called a witness and developed the fact that deceased had not told her when she was giving the history of the case that she had lost blood or that she had had any hemorrhage. Under the circumstances, we think the bill of exception fails to reflect reversible error.

The court's charge in its entirety appears to have adequately presented the issues raised by the evidence. The charge

appears to have been amended after appellant filed his exceptions thereto. Several instructions requested by appellant were given.

In his motion for new trial appellant alleged misconduct on the part of the jury in several matters. The principal misconduct which appellant apparently stressed in the introduction of testimony on the motion for new trial was the fact that some of the jurors, after impanelment and prior to returning a verdict, talked to parties over the telephone and that the jury were carried to a barber show where some conversation ensued between them and the barbers. If we comprehend the record, in each instance of the alleged misconduct, the juror as well as the party to whom he talked gave testimony conclusively establishing the fact that the case was not discussed and that appellant could not have been injured. In short, the State used all of the available testimony to negative injury. See Mauney v. State, 210 S. W., 959; Toussaint v. State, 244 S. W., 514; Lewis v. State, 58 S. W. (2d) 827. Under the circumstances, reversible error is not presented.

We have not undertaken to discuss all of the bills of exception found in the record. An examination of all of appellant's contentions leads us to the conclusion that reversible error is not presented.

The State's motion to dismiss the appeal is overruled and the judgment of the trial court is affirmed.

*Affirmed.*

HAWKINS, J., absent.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING

HAWKINS, JUDGE.—Appellant renews his contention that the evidence does not support the conviction. It was the State's claim, and so charged in the indictment, that appellant beat deceased with a stick causing a rupture of the lung which resulted in pneumonia which caused death. If we do not misunderstand appellant's position, it is that the evidence does not with sufficient certainty show that the injury to the lung resulted from the beating inflicted on deceased by appellant. The evidence of the medical experts is to the effect that ordinarily they would not expect to find a rupture of the lung such as was discovered by the autopsy without broken ribs, which

injury was absent in the present case, but the testimony from some of the physicians was to the effect that such injury to the lungs might occur in the absence of a broken rib. We have re-examined all the testimony again, and find ourselves under the entire record unable to agree with appellant's contention. The evidence is set out rather fully in our original opinion. It seems useless to repeat it here.

Appellant urges that we reached a wrong conclusion in disposing of the bills particularly discussed originally. They have been examined again in the light of appellant's motion, and we remain of opinion that they were properly disposed of.

Appellant seems to think his bill of exception No. 46 which was not specifically discussed in our original opinion, exhibits error. It relates to a remark made by a juror during the jury's deliberation regarding Dr Boguskie, who was a State's witness, and which remark appellant construes as commendatory of the witness in a way which might have resulted injuriously to appellant, and was in the nature of new evidence. We have examined bill No. 46 in its entirety; it is too long to be set out here even in substance because it incorporates the testimony of jurors on the point involved. The act of the trial court in not sustaining appellant's claim of misconduct of the jury on the point mentioned is not shown by said bill to have been erroneous.

We find nothing in appellant's motion leading us to believe the original affirmance was error. The motion, therefore, will be overruled.

*Overruled.*