# JANUARY 6, 1937

### JOHN E. PARKS v. THE STATE.

No. 18402.  Delivered October 21, 1936.
State's Rehearing Denied January 6, 1937.

The opinion states the case.

*S. L. Gill,* of Raymondville, and *Cameron & Hardin,* of Edinburg, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for eight years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Frank Beale by shooting him with a gun.

The homicide occurred on the 17th of April, 1935, near the Dew Drop Inn in the city of Mercedes. Appellant was an officer and was wearing a pistol on the occasion of the difficulty. He and a soldier had gone to the inn together, and were drinking at the bar. Deceased and a friend were present. Deceased was sitting at a table some distance from the bar. Appellant, the soldier and the friend of deceased were standing at the bar throwing dice for the drinks. Appellant won. Deceased went to the bar and accused appellant of cheating his friend, and immediately knocked appellant down. Appellant's body struck a door, breaking the panel. Appellant made no effort to pull his pistol after being assaulted by deceased. He stated to deceased that he had not cheated his friend. Deceased then offered to apologize. Appellant declined to shake hands with him. Appellant and his companion left the tavern and deceased followed them. Deceased again knocked appellant down and when appellant still refused to shake hands with him, he told him that he was going to whip him again. He started

toward appellant in an effort to strike him again. Appellant drew his pistol and fired two shots, the second taking effect. Deceased was an ex-prize fighter, the proof showing that he was physically a powerful man. Appellant was no match for him.

The State introduced in evidence appellant's voluntary statement and the dying declaration of deceased. We quote from appellant's statement as follows:

"We walked into the bar, ordered a sandwich and a glass of beer. While we were standing there Frank Beale's friend, whose name I don't know, came up to where we were. Sergeant and I were standing at the bar there in the Dew Drop Inn and after we ordered our sandwiches and beer we shook the dice in a cup to see who would pay for the sandwiches and the beer. Sergeant won and then a little bit later this friend of Frank Beale came to where we were and said, 'I want to roll dice with you boys for the drinks.' I told him that Sergeant had just stuck me for the drinks and I asked him if he wanted to roll the dice with me to see who would pay for the drinks for all three of us and he said 'yes.' Then I rolled the dice with this friend of Frank Beale and I won. At that time Frank Beale was sitting in this place over at a table about fifteen feet from me talking to a girl who worked in this place. After I won the dice from this man I told him that he was stuck and just after that Frank Beale got up and walked over to where we were and said to me 'You can't get by with this. This is my friend.' I said 'Frank, I haven't done anything to your friend, Frank.' He said, 'You have,' and he caught me by the shoulder and turned me around and hit me with his fist on my chin and knocked me down. When I got up I said, 'Let's go, Sergeant.' Someone in the house said, 'Frank you are wrong. John has done nothing to your friend.' Then Frank said that he would apologize and that is when I said, 'Let's go, Sergeant; that's all right, Frank.' Then the sergeant and I went outside of this place and Frank followed us outside and said that he was going to beat me up until I apologized to him. After he came out he said something to me that I believe was 'What are you going to say, Buddy?' and I said, 'Nothing. I am going to take Sergeant home.' Then Frank hit me with his fist again, this time hitting me on the right side of my nose and my right cheek and I fell down there on my back in front of the Dew Drop Inn. As I started to get up he was coming to me and I pulled out my gun and just as I was knocked down or as I was getting up, I don't remem-

ber which, and fired one shot over his head and said 'Frank stop; don't hit me no more.' Then I fired again and hit him this time in the stomach. As I shot him he slumped there and just as he started to go down two people came and caught him and put him in a car to take him to the hospital. I don't know who they were."

The foregoing statement embraces a declaration to the effect that this was the first trouble appellant and deceased had ever had. We quote from the dying declaration as follows:

"Last night this boy from San Antonio named Clarence Margozwitz, well he got to shooting dice there in the Dew Drop Inn in Mercedes and this law and the sergeant over at the arms post at Brownsville were gypping this boy and I told them not to do it and then this law John Parks got nasty and I took a smack at him with my fist and knocked him down; and then Parks tried to tell me that he didn't gyp this kid in the dice game and I tried to shake with him and told him that I was sorry that I hit him and he wouldn't accept the apology and he got up and I knocked him down again with my fist and when I knocked him down he had his gun in a scabbard on his hip and he got up again and I tried to apologize to him again and he wouldn't accept the apology the second time and pulled his gun and fired twice at me. He missed me the first time he shot and he hit me the second. * * * Parks and myself we ain't ever had any personal trouble before this shooting."

Witnesses for the State testified that immediately before appellant shot deceased, deceased said: "If you don't accept my apology I will whip the hell out of you." They testified further that with these remarks deceased started toward appellant in an effort to hit him.

Appellant did not testify. Witnesses for him gave testimony which was substantially the same as that of witnesses for the State.

Under the circumstances reflected by the record, it is appellant's contention that a conviction for murder with malice is unwarranted. Nothing in the record points to coolness or deliberation on the part of appellant when he fired the fatal shot. The testimony of the State, as well as that of appellant, shows that appellant had been knocked down twice and was again being attacked by deceased at the time shots were fired. Appellant had made no effort to draw his pistol until deceased attacked him the third time. All of the evidence shows that there was no premeditation, and so strongly indicates that appellant was not in a condition where his mind was capable

of cool reflection as to lead us to the conclusion that a conviction for murder with malice was unwarranted. We disclaim any intention of holding that the evidence would not warrant a conviction for murder without malice.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The State in its motion for rehearing expresses apprehension that the effect of our original opinion is to again read into the present murder statutes degrees of murder, thereby recognizing two offenses. We disclaim any such intention. Our expressions heretofore support such disclaimer. See Herrera v. State, 117 Texas Crim. Rep., 389, 36 S. W. (2d) 515; Hunt v. State, 123 Texas Crim. Rep., 559, 59 S. W. (2d) 836; Chappell v. State, 124 Texas Crim. Rep., 187, 61 S. W. (2d) 842.

Art. 1257b, P. C., provides in part that "unless from all the facts and circumstances in evidence the jury believes the defendant was prompted and acted with his malice aforethought, they cannot assess the punishment at a period longer than five years." The punishment assessed in the present case was eight years, therefore, the jury must have found that appellant was prompted by malice aforethought. Our purpose in the original opinion was simply to hold that from all the facts and circumstances proven by the State the jury was unwarranted in finding that the killing was upon malice aforethought. We did not intend to leave the impression that there must of necessity be evidence of premeditation or previously formed design to kill. A killing might occur under circumstances where malice could be inferred. A re-examination of the evidence indicates that deceased for some unexplained cause may have entertained ill-will towards appellant, but the record fails to show that appellant ever entertained any such feeling towards deceased. The State's own testimony excludes any fact or circumstance usually regarded as evidencing malice, and excludes conditions from which malice may be inferred. Such being the record, this court finds itself under the necessity of making application of Art. 848, C. C. P., which expressly authorizes a reversal as well upon the facts as upon the law.

If any fact could be discovered in the record which would warrant the penalty assessed this court would not disturb itself with the weight of the testimony supporting such fact, but in the absence of evidence to support the finding we must in good conscience reverse the judgment.

Various complaints were registered against the court's instructions. We advert to only one. Section (d) of paragraph nine was objected to as requiring the jury to find that deceased did not intend to kill appellant before the latter would be entitled to kill deceased as against an attack which appellant did not believe to be deadly, the criticism being that appellant's rights could not depend on the intent of deceased, but only upon his (appellant's) own intent. We call attention to this matter so that in event of another trial the charge may be so worded as to avoid the criticism.

The State's motion for rehearing is overruled.

*Overruled.*

MORROW, P. J., absent.