JOHN E. PARKS v. THE STATE.

No. 19527. Delivered April 20, 1938.
Rehearing denied June 22, 1938.

The opinion states the case.

S. L. Gill, of Raymondville, and A. W. Cameron and Sid L. Hardin, both of Edinburg, for appellant.

Lloyd W. Davidson, State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder without malice; the punishment, confinement in the penitentiary for four years.

The opinion on a former appeal is reported in 131 Texas Crim. Rep. 464, 99 S. W. (2d) 943.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Frank Beale by shooting him with a gun.

The testimony adduced upon the present trial is substantially the same as that shown in the opinion on the former appeal. Hence we deem it unnecessary to again set forth a detailed statement of the facts. However, at this time we quote appellant's voluntary statement and the dying declaration of the deceased. Appellant's statement reads as follows:

"We walked into the bar, ordered a sandwich and a glass of beer. While we were standing there Frank Beale's friend, whose name I don't know, came up to where we were. Sergeant and I were standing at the bar there in the Dew Drop Inn and after we ordered our sandwiches and beer we shook the dice in a cup to see who would pay for the sandwiches and the beer. Sergeant won and then a little bit later this friend of Frank Beale came to where we were and said, 'I want to roll dice with you boys for the drinks.' I told him that Sergeant had just stuck me for the drinks and I asked him if he wanted to roll the dice with me to see who would pay for the drinks for all three of us and he said 'Yes.' Then I rolled the dice with this friend of Frank Beale and I won. At that time Frank Beale was sitting in this place over at a table about fifteen feet from me talking to a girl who worked in this place. After I won the dice from this man I told him that he was stuck and just after that Frank Beale got up and walked over to where we were and said to me 'You can't get by with this. This is my friend.' I said 'Frank, I haven't done anything to your friend, Frank.' He said, 'You have,' and he caught me by the shoulder and turned me around and hit me with his fist on my chin and knocked me down. When I got up I said, 'Let's go, Sergeant.' Someone in the house said, 'Frank, you are wrong. John has done nothing to your friend.' Then Frank said that he would apologize and that is when I said, 'Let's go, Sergeant; that's all right, Frank.' Then the sergeant and I went outside of this place and Frank followed us outside and said that he was going to beat me up until I apologized to him. After he came out he said something to me that I believe was 'What are you going to say, Buddy?' and I said, 'Nothing. I am going to take Sergeant home.' Then Frank hit me with his fist again, this time hitting me on the right side of my nose and my right cheek and I fell down there on my back in front of the Dew

Drop Inn. As I started to get up he was coming to me and I pulled out my gun and just as I was knocked down or as I was getting up, I don't remember which, and fired one shot over his head and said 'Frank, stop; don't hit me no more.' Then I fired again and hit him this time in the stomach. As I shot him he slumped there and just as he started to go down two people came and caught him and put him in a car to take him to the hospital. I don't know who they were."

We quote from the dying declaration of the deceased as follows: "Last night this boy from San Antonio, named Clarence Margozwitz, well he got to shooting dice there in the Dew Drop Inn in Mercedes and this law and the sergeant over at the arms post at Brownsville were gypping this boy and I told them not to do it and then this law John Parks got nasty and I took a smack at him with my fist and knocked him down; and then Parks tried to tell me that he didn't gyp this kid in the dice game and I tried to shake with him and told him that I was sorry that I hit him and he wouldn't accept the apology and he got up and I knocked him down again with my fist and when I knocked him down he had his gun in a scabbard on his hip and he got up again and I tried to apologize to him again and he wouldn't accept the apology the second time and pulled his ·gun and fired twice at me. He missed me the first time he shot and he hit me the second * * * . Parks and myself we ain't ever had any personal trouble before this shooting."

Appellant earnestly insists that the evidence is insufficient to support a conviction, his position being that the testimony in its entirety conclusively shows that he acted in self-defense. We are unable to agree with this contention. In the opinion on the former appeal we expressly disclaimed any intention of holding that the evidence would not warrant a conviction for murder without malice. We said: "All of the evidence shows that there was no premeditation, and so strongly indicates that appellant was not in a condition where his mind was capable of cool reflection as to lead us to the conclusion that a conviction for murder with malice was unwarranted." Whether, under the circumstances reflected by the record, appellant was justified in shooting deceased was a question for the jury.

An application for a change of venue on the alleged existence of prejudice was in due time filed and presented to the trial court. After controverting affidavits had been filed by the State, it was agreed that the testimony adduced upon the former trial on the question of a change of venue should be made a part of the record herein. Our examination of the bill of exception

leads us to the conclusion that the testimony heard by the trial judge presented conflicting theories as to prejudice. Hence we are constrained to hold that the application was properly overruled. From the case of McNeely v. State, 104 Texas Crim. Rep. 267, 283 S. W. 522, the following quotation is taken:

"Touching the duty of the trial court and of this Court upon an application for change of venue, the law, as deduced from the statutes and the decisions, is, as we understand, that where the application is upon the ground of prejudice, and is controverted, the burden is upon the accused to prove the existence of such prejudice against him or against his case that it is not probable that he can have a fair and impartial trial.

"The duty is upon the trial court to weigh the evidence, and if therefrom there arise conflicting theories, one tending to show prejudice of the nature mentioned and the other the contrary, the discretion as to the court is to adopt either. In the absence of abuse of this discretion, the judgment is not to be disturbed upon the appeal. If, however, the evidence is such that it leads to the conclusion that bias, prejudice, or prejudgment of appellant or his case is such as to render it improbable that a fair and impartial trial can be given him, the trial court is without discretion to refuse the application."

Appellant filed various objections to the charge of the court. An examination of the charge and of the special instructions given at the request of the appellant leads us to the conclusion that the exceptions were not well taken.

The bills of exception relating to argument of counsel for the State are not deemed to present reversible error.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

KRUEGER, JUDGE.—Appellant, on his motion for rehearing, for the first time contends that he was prosecuted and convicted upon an indictment returned by an illegally drawn, selected and impaneled grand jury, in this: That the grand jury which returned the bill of indictment against him in this case was selected and impaneled at the May term, 1935, of said court,

being the same term at which the indictment was returned against him, and that the trial court arbitrarily disregarded Article 333, C. C. P., in the selection of a grand jury and caused the same to be drawn, selected and impaneled as provided for by Article 348, C. C. P. Therefore, he maintains that he is being deprived of his liberty without due process of law and cites us to the cases of Martinez v. State, 114 S. W. (2d) 874, and Handy v. State, 114 S. W. (2d) 878.

We find ourselves unable to agree with his contention.

Article 333, C. C. P., provides as follows: "The district judge shall, at each term of the district court, appoint three persons to perform the duties of jury commissioners, who shall possess the following qualifications: * * * ."

Article 348, C. C. P., provides: "If there should be a failure from any cause to select and summon a Grand Jury, as herein directed, or, when none of those summoned shall attend, the District Court shall, on the first day or at any time thereafter at the discretion of said court, direct a writ to be issued to the Sheriff commanding him to summon a Jury Commission, selected by the Court, which commission shall select not less than twelve nor more than sixteen persons, as provided by law, who shall serve as Grand Jurors."

As will be noted from the foregoing statutes, the selection of a grand jury as provided for by Article 348 is not absolutely void. If the exigency exists which would authorize the drawing and selection of a grand jury and the impaneling thereof under said article, the jury is legally selected and impaneled. However, in case the trial court arbitrarily disregarded Article 333 and proceeded to draw, select and impanel a grand jury as provided by Article 348 without good cause for so doing, then the act of the grand jury might not be legal as to an accused who interposed timely and proper objection.

The presumption, however, obtains that when the court directs the drawing and selection of a grand jury under Article 348, and impanels the same, he is acting in accordance with the law and the terms of the statutes. To overcome this presumption the appellant may, by proper proceedings at the proper time, raise the objection and offer proof to rebut such presumption. However this is not the case here; no question was raised as to the time and manner of the drawing and selection of the grand jury and no proof was offered in support of his contention in the court below. Hence we are not advised by the record whether or not the exigency existed which would authorize the

drawing and selection of a grand jury under Article 348. In the absence of any proof in the record to the contrary, the presumption of legality above mentioned must obtain.

In the instant case no question was raised in the court below as to the time and manner of drawing, selecting and impaneling of the grand jury; hence under the following authorities, the question now presented is not properly brought before us for review. See Ex parte Holland, 91 Texas Crim. Rep. 339; Powell v. State, 99 Texas Crim. Rep. 276; Hunter v. State, 108 Texas Crim. Rep. 142.

It is noted that the indictment upon which the prosecution is based and the proceedings with reference thereto all appear upon their face to have been regular.

All other matters urged by appellant have been carefully reviewed in the light of his motion, but we remain of the opinion that the correct disposition was made of the cause on its original submission.

Accordingly, the motion for a rehearing will be overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.