RUSSELL MCDONOUGH V. THE STATE.

No. 22796. Delivered March 22, 1944.

The opinion states the case.

*Waldrop & Shaw,* of Henderson, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Russell McDonough was convicted of the murder of Marvin Gibson without malice and sentenced to two years in the penitentiary.

The indictment alleges that the offense was committed on the 5th day of April, 1943, by striking and beating the deceased with his fist and by kicking him with his feet. Inasmuch as no deadly weapon was used, an intent to murder must be found from the facts and circumstances of the case and no presumption will arise from the mere fact of beating him with his fists and kicking him with his feet. A helpful discussion of the sufficiency of the evidence hereinafter related will be found in Barnett v. State, 162 S. W. (2d) 411, and authorities therein discussed.

If the jury had any evidence from which they might find an intention to kill, their finding would be binding on this court. An utterance made by the appellant, the relative size and strength of the parties, the manner of the attack and the extent to which it was carried are all proper factors for consideration. Among other things, the wounds inflicted, particularly if visible to the assailant or reasonably to be contemplated by him, may be considered. The facts of this particular case are rather aggravating and yet there is a lack of any express intention to kill or to inflict any serious bodily injury. There were no visible wounds indicating any serious nature, for the doctor who treated him and was called by the State, so testified. He did not consider any injury to be serious for two or three days thereafter. Mr. A. Crim, the undertaker who handled the body, testified comprehensively on the subject and we quote from his evidence the following "* * * there are some three or four places across the chest and you might say from shoulder to shoulder, about four inches from each shoulder where the bruised places began to show up. After eight or ten days they were healed over and turned black, some were purging a little, what I mean by purging mucous coming from them and some were not. In all twelve to eighteen places about his forehead and chest you would term as skin scars because in eight or ten days they heal

up, those scars ranged from one to hardly two inches in length. Altogether we found 12 or 18 scars on his face and chest. They had slightly healed over, some had mucous passing and some didn't." He added further that he found blood in the ears of the deceased even on the day he was buried. The wounds were deep enough to bring blood.

The record contains no motive for the killing and there is no background to the case aiding in the support of a presumption of an intent to kill. The deceased had married appellant's sister. There was property in which the heirs of the appellant's father had an interest in community with their mother, still living. Deceased's wife was a sister of appellant and one of the heirs. An effort was being made to obtain an oil and gas lease on a tract of land and the wife of the deceased had hesitated to sign with the other heirs. Probably this provoked appellant but there are no details indicating the extent and the State's own witness, John Hale, quotes appellant as saying immediately after the difficulty that the matter of the lease had nothing to do with the trouble. The lease had been signed by deceased and his wife the day before and it is indicated that appellant did not know this at the time of the assault on Gibson. One witness heard something said by them about the lease. Hale's evidence quoted appellant as saying that he provoked the deceased to strike him first. In the absence of a plea of self-defense the statement may be of minor importance in the consideration of the principal question before us.

Tom Hembree and another were working in the print shop with deceased at the time of the difficulty, and testified in behalf of the State that they were close enough to hear the conversation preceding the fight and that there was no loud or abusive language used. Appellant hit the deceased with his fist and kicked him with his feet. The shoes, or boots, worn by appellant were not relied upon to aggravate the assault. When the two witnesses interfered to stop the fight they found the deceased on the floor and apparently unconscious, with a considerable amount of blood on his face. Appellant expressed the opinion to them that he was not hurt and would soon get up. An ambulance was called and he was taken to the hospital where he was given medical attention. He was given rest medicine and was probably in a semi-conscious condition from the time he was taken to the hospital. A few days thereafter, a test was made which indicated brain injury but there were no broken bones in his body. The doctor said the cause of his death was the injuries he had received to his chest and head, adding, "I

could not say which injury to the chest or head caused his death. Terminal pneumonia, as we call it, may have been a factor in his death." The doctor further testified that he did not consider it a severe concussion of the brain when he first saw him. He stated that quite often boys playing football receive concussions, are out a few minutes and then are all right; that it is a common thing when men have fist fights, or even in boxing, for them to have a concussion and be out a few minutes and later revive and go on like nothing has happened. He thinks that it was a combination of his injuries that produced death. The injuries developed and were found to be more serious than they first appeared to the doctor.

Two other physicians were called to see him but they did not testify in the case.

The foregoing summary of the evidence presents that part which we consider to be pertinent in determining the question of intent. There are no circumstances and no utterances upon the part of appellant before or after the occurrence to throw any light on the question and we are unable to find any evidence supporting the jury's verdict finding appellant guilty of murder because there is a total lack of any evidence of intent to kill which is essential to the crime of murder.

It will not be necessary to discuss the other questions presented in this appeal. The judgment of the trial court is reversed and the cause is remanded.