### OSCAR BELL v. THE STATE.

No. 23429. Delivered October 23, 1946.

510

The opinion states the case.

*Taylor & Taylor,* of Temple, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding, Judge.

Appellant was charged with the murder of his wife, Fern Bell, "by striking her with his fists." He was found guilty of murder without malice and his punishment assessed at five years in the penitentiary.

Appellant urges that the judgment should be reversed, (a) because the allegation in the indictment that he killed deceased by striking her with his fist is not sustained by the evidence; (b) that the State has failed to establish the corpus delicti, in that it has not shown that the death of deceased was caused by any *criminal* act or agency of appellant.

Each proposition calls for a review of the evidence. It is not practical to set out all the testimony, and only so much of it will be stated as bears upon the propositions indicated above.

The offense, if any, is alleged to have occurred on Sunday, December 2, 1945. Appellant and his wife lived in Temple, Texas, with their three children, Jack Allen Bell (a boy 17 years old), Jo Ann Bell (a girl 13 years old), and a younger son, Oscar Bell, Jr. On that morning Mrs. Bell was not feeling well and did not go to church. She prepared dinner for the family, all of whom were present and ate dinner. Jack Allen Bell left short-

ly after noon and returned about 3:30 o'clock p. m. His mother was preparing supper. Jack Allen noticed a bump on his mother's head. He asked her how she got the bump and she replied, "Daddy caused it." At this time appellant was in an adjoining room lying on the bed. In a few minutes he came into the room where his wife and Jack Allen were and appellant said to his wife, "That is a pretty bad place (referring to the bump on her head) and asked her not to go to church" that night. Jack Allen further testified, "That is all that was said by my father. As to whether Daddy said how that was put on her head he didn't say a word—they didn't discuss it at all." At the time the injury to her mother occurred Jo Ann was the only State's witness who was at home. She testified: "* * * my father and mother were in the kitchen. At that time I did not see my father do anything to my mother. I did not at any time hear my mother scream or complain until later in the afternoon. I did not have occasion to go to my father for any reason or remonstrate with him. As to whether I saw any bruises on her, it was when I went into the kitchen to get the aspirins for daddy to give them to mother—that was in the afternoon; I don't recall what time it was. At that time I did not see my father strike my mother, or kick her. I did not at any time see my mother go to the bath room. * * *. I did not at any time see my father mistreat or abuse my mother; I didn't see him strike or hit her at any time. My father was in a good humor on that day and my mother was too. * * *. I first saw this bruise when I went in to get the aspirin; my daddy was in the kitchen; he was looking for the aspirin and he called me and I found it; my mother was sitting by the window; she wasn't doing anything. I noticed a bruise on her head at that time; she wasn't holding her head, she was just sitting; she was conscious. My father then gave the aspirin to her and a glass of water; he gave her three. He didn't do anything else at the present time."

Later in the afternoon Mrs. Bell became seriously ill, complained of her head, vomited, and finally became unconscious, and was taken to the sanitarium about six o'clock in the afternoon. The doctor testified that her condition was critical; she was semiconscious, mentally confused, and her general condition serious. There was a bruise on her right temple some two inches in diameter which appeared to have been recently sustained; there was also a bruise on one of her arms. Her condition grew steadily worse, and she died about an hour after reaching the sanitarium. A post mortem operation revealed a large area of hemorrhage between the scalp and skull, and a large area of heemorrhage on the right side of the brain. The doctor who per-

formed the autopsy testified: "* * * In my medical opinion, * * * the death of Mrs. Fern Bell was caused by a blow on the left side of the head, followed by extensive hemorrhage beneath the skull, and on the right side of the brain, and accompanied by considerable hemorrhage in the interior of the brain substance. It is possible for a person to live several hours after receiving such an injury. They would lose consciousness as the hemorrhage continues. * * * Of my own knowledge I know nothing about how the injury came to her head. I only know and that is all I propose to testify to, is that there had been some external force from some source or other to her head, but how it came to be there, the abrasion or bruise or bump that I saw, I know nothing about that and don't undertake to state. As to the bump I referred to and whether the skin was broken or just an abrasion or bump there, it was a large bruise, somewhat more than an inch in diameter, but the skin was not broken. * * *"

Evidence introduced by the State from neighbors indicated that the relations between appellant and his wife were not always pleasant, and at times he had been guilty of violence towards her, the last occasion being sometime in September prior to deceased's death in December.

In regard to appellant's first proposition, we observe that it is too well-settled to call for extensive discussion that when the indictment avers the means of the killing, or the instrument with which it was accomplished, the same must be proven as alleged. Hardrick v. State, 142 Tex. Cr. R. 520, 155 S. W. (2d) 367, which cites Arbetter v. State, 79 Tex. Cr. R. 487, 186 S. W. 769; Follis v. State, 46 Tex. Cr. R. 202, 78 S. W.1069; Branch's Ann. Tex. P. C., Sec. 1589, p. 936, and cases there cited.

As to appellant's second proposition, it will be noted that in cases of homicide to establish the corpus delicti there must be shown a criminal act and the resulting death, and the agency of the accused in its commission. Smith v. State, 147 Tex. Cr. R. 342, 180 S. W. (2d) 622, in which a number of other cases are cited; Branch's Ann. Tex. P. C., Sec. 1891, p. 1049.

Reference to the statement of facts reveals, (1) an absence of evidence that the bruise upon deceased's head was caused by appellant striking her with his fist, (2d) the statement of deceased to her son in response to his inquiry as to the bruise on her head that his daddy caused it falls short of any accusation of a criminal act on appellant's part; that is, any intentional act of violence intended to injury deceased. So far as this

record shows appellant may have been the innocent cause which resulted in the injury, without any intent to kill, or even injure his wife.

The judgment is reversed and the cause remanded.