Opinion issued June 23, 2005













                                              
 In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-01016-CR
 __________
 
NARROW DEPAR LOCKETT, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 882,257
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Narrow Depar Lockett, guilty of murder, and the trial
court sentenced him to life in prison.


 In four points of error, appellant contends that
the evidence is legally and factually insufficient to prove beyond a reasonable doubt
that he committed murder and that the trial court erred in denying appellant’s motion
to suppress his two taped statements. We affirm. 
Facts
          J.D., the seven-year-old sister of three-year-old D.D., the complainant, testified
that, on the morning of July 14, 2001, appellant lifted D.D. by the neck, choked him,
hit his body against the wall, and then threw him on the couch. D.D. fell off the
couch and did not appear to be conscious and did not respond when J.D. threw water
on his face. 
          Upon responding to a report that someone was not breathing at appellant’s
house, paramedics took D.D. to the hospital, where he later died from massive brain
trauma. The same day, appellant was arrested at the hospital for causing injury to a
child,


 and he was taken to the Houston Police Department’s (“HPD”) Child Abuse
Unit. At the Child Abuse Unit, Officer Franklin Gans informed appellant of his legal
rights


 and asked appellant if he was willing to give a videotaped statement.
Appellant said that he was not willing to give a statement and asked, “Can I have a
lawyer now?” Officer Gans stopped the video recorder and told appellant that there
was no lawyer present in the building, but that the interview could be terminated and
appellant could get a lawyer at a later date. Appellant then told the officer that he
wanted to give a statement and that he was a good father. Officer Gans turned the
video and audio recorder back on and asked appellant if he was going to give a
statement. Appellant acknowledged that he would give a statement. 
          On July 15, 2001, James Binford, a sergeant in the Homicide Division of the
HPD, took appellant from the jail at the central police station, informed appellant of
his legal rights, and took appellant before Judge Lewis, who, again, read appellant his
legal rights. Appellant indicated to the judge that he understood each right. Sergeant
Binford then took appellant to the offices of the Homicide Division and obtained a
videotaped statement from appellant. The State contends that, in his statements,
appellant said that he whipped D.D. in the past, but that he did not beat him on the
day of his death. The State contends that, in his statements, appellant said that D.D.
suffered a seizure. 
          Appellant filed a motion to suppress the two statements he made to Officer
Gans and Sergeant Binford, respectively. The trial court denied appellant’s motion
to suppress and found as a matter of law that appellant freely and voluntarily waived
his right to counsel prior to giving the statements because, even after he was informed
by Officer Gans and Sergeant Binford of his legal rights, appellant persisted in giving
self-serving, narrative statements, which amounted to a voluntary waiver of his rights. 
          Dr. Coburn Allen, D.D.’s attending physician on the day of D.D.’s death,
testified that, in his opinion, the degree of trauma to D.D.’s brain could only have
been caused by an adult striking D.D. as hard as he could into a blunt object. Dr.
Allen, Officer Gans, and paramedic John Nemec all testified that, on July 14, 2001,
they saw innumerable healed and fresh scars on D.D.’s body, which were consistent
with D.D. having suffered abuse on multiple occasions. Natalie Days and J.D.,
D.D.’s mother and stepsister, respectively, testified that appellant regularly hit D.D.
with a belt and an extension cord. 
 Sufficiency of the Evidence
          In points of error one and two, appellant contends that the evidence is legally
and factually insufficient to prove beyond a reasonable doubt that he possessed the
requisite mental state–intent to cause serious bodily injury–to commit murder. 
Appellant argues that his actions were reckless, rather then intentional, and thus, that
his actions only qualify for the offense of injury to a child, not murder. 
Standard of Review 
          In determining the legal sufficiency of the evidence, we review the evidence
in a light most favorable to the verdict to determine whether any rational fact finder
could have found the essential elements of the criminal offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);
Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). Although our
analysis considers all evidence presented at trial, we may not re-weigh the evidence
or substitute our judgment for that of the fact finder. King v. State, 29 S.W.3d 556,
562 (Tex. Crim. App. 2000). This standard of review is the same for both direct and
circumstantial evidence cases. Fitts v. State, 982 S.W.2d 175, 185 (Tex.
App.—Houston [1st Dist.] 1998, pet. ref’d). If there is evidence that establishes guilt
beyond a reasonable doubt and the jury believes the evidence, the judgment must be
affirmed. Id. 
          In a factual sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla,
143 S.W.3d at 817 (citing Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App.
2004)). Our evaluation may not intrude upon the fact finder’s role as the sole judge
of the weight and credibility accorded any witness’s testimony. Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). What weight to be given contradictory
testimonial evidence is within the sole province of the fact finder because it turns on
an evaluation of credibility and demeanor; the fact finder may choose to believe all,
some, or none of the testimony presented. Id. at 407-08. We must defer appropriately
to the fact finder to avoid substituting our judgment for its judgment. Zuniga, 144
S.W.3d at 481-82.
 Murder
          A person commits the offense of murder if he (1) intentionally or knowingly
causes the death of an individual or (2) intends to cause serious bodily injury and
commits an act clearly dangerous to human life that causes the death of an individual. 
Tex. Pen. Code Ann. § 19.02(b) (Vernon 2003). 
          A person acts with intent when it is his conscious objective or desire to engage
in the conduct or cause the result. Dues v. State, 634 S.W.2d 304, 305 (Tex. Crim.
App. 1982). When a deadly weapon is used in a deadly manner, the presumption of
intent to kill is practically conclusive. Phillips v. State, 216 S.W.2d 213, 214 (Tex.
Crim. App. 1948). However, if the instrument or means used is not dangerous or is
not used in a deadly manner, then the intent to kill is not presumed and must be
established by the facts. Id. An utterance made by the appellant, the relative size and
strength of the parties, the manner of the attack, and the extent to which it was carried
out are all proper factors for consideration in determining intent. Sadler v. State, 364
S.W.2d 234, 237 (Tex. Crim. App. 1963). The wounds inflicted, particularly if
visible to the assailant or reasonably to be contemplated by him, may also be
considered. McDonough v. State, 178 S.W.2d 863, 864 (Tex. Crim. App. 1944). 
          In this case, the manner of the attack and the extent to which it was carried out,
support a finding that appellant intended to cause serious bodily injury. Dr. Allen
testified that he believed D.D.’s massive brain injury could only have been caused by
an adult hitting D.D. against a blunt object as hard as he could. See Encina v. State,
471 S.W.2d 384 (Tex. Crim. App. 1971) (finding intent where two-year-old died from
bleeding and swelling in brain caused by child’s father pushing child into blunt
object). J.D. testified that appellant picked D.D. up by the throat, choked him, and
hit his body against a wall. Appellant then threw D.D. onto a couch, from which he
fell to the floor. On appeal, appellant does not contest that he threw D.D. against a
wall and caused D.D.’s death, but he contends that he lacked the intent to cause
serious bodily injury to D.D. However, the eyewitness testimony, combined with the
medical testimony and evidence concerning the extent and severity of D.D.’s injuries,
do not reflect a mere “desire to get [D.D.’s] attention” as appellant argues was his
intent. Such a violent assault on a young child may be reasonably expected to cause
death. See Lindsey v. State, 501 S.W.2d 647, 648 (Tex. Crim. App. 1973) (finding
intent where father of three-year-old victim testified that he “whipped” his child and
medical testimony showed that child’s injuries could only have been caused by
human being). 
          The difference in the sizes of D.D. and appellant also contributes to a showing
of intent. See Encina, 471 S.W.2d at 387; Sadler, 364 S.W.2d at 235 (finding
evidence of intent where male defendant, a boxer, who was 30 years old, over six feet
tall, and weighed 190 pounds, killed the female complainant, who was 22 years old,
five feet tall, and weighed 90 to 100 pounds, by hitting her in the face and head with
his hands and fists). D.D. was three years old, three feet four inches tall, and weighed
33 pounds. Appellant was 26 years old, five feet six inches tall, and weighed 147
pounds. 
          Appellant’s prior abuse of D.D. further indicates that he intentionally, rather
than recklessly, inflicted the injury that caused D.D.’s death. See Robbins v. State,
88 S.W.3d 256, 261 (Tex. Crim. App. 2002) (holding that, where defendant pleads
not guilty, but subsequently puts intent at issue through vigorous cross-examination
or the presentation of various defensive theories, “relationship evidence,” regarding
previous injuries infant victim suffered while in defendant’s care, is relevant to issue
of intent). 
          Based on the manner and extent of appellant’s attack, the extent of D.D.’s
injuries, the relative difference in size and strength between appellant and D.D., and
appellant’s prior history of abuse of D.D., a rational trier of fact could have found,
beyond a reasonable doubt, that appellant had the intent to cause serious bodily injury
to D.D. Thus, we hold that the evidence was legally sufficient to support the verdict. 
Moreover, the verdict is not so contrary to the overwhelming weight of evidence as
to be clearly wrong and unjust. Accordingly, we hold that the evidence was factually
sufficient to support the verdict.
          We overrule points of error one and two.
Improperly Admitted Evidence
          In points of error three and four, appellant contends that, in violation of articles
38.22 and 38.23 of the Texas Code of Criminal Procedure, the trial court erred in
denying his motion to suppress his statements. 
Standard of Review 
          The standard of review for a trial court’s ruling on a motion to suppress
evidence is abuse of discretion. State v. Derrow, 981 S.W.2d 776, 778 (Tex.
App.—Houston [1st Dist.] 1998, pet. ref’d). Although an appellate court may review
legal questions de novo, almost total deference is afforded to the trial court’s findings
of fact because the evidence is viewed in the light most favorable to the trial court’s
ruling. Id. On appeal, the court is limited to determining whether the trial court erred
in applying the law to the facts. Id. In reviewing application of law to fact questions
that turn on an evaluation of the credibility and demeanor, the trial court’s ruling
should be afforded almost total deference. Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).
Analysis
          The relevant portion of article 38.22, section 3(a)(2) provides as follows:
(a)no oral or sign language statement of an accused made as a result
of custodial interrogation shall be admissible against the accused
in a criminal proceeding unless:
                    . . . 
(2)prior to the statement but during the recording the accused
is given the warning in Subsection (a) of Section 2


 above
and the accused knowingly, intelligently and voluntarily
waives any rights set out in the warning.
 
Tex. Code Crim. Proc. Ann. art. 38.22 § 3(a)(2) (Vernon 2005). This statute does
not require an express verbal statement from the defendant that he waived his rights
prior to giving a statement. Barefield v. State, 784 S.W.2d 38, 40-41 (Tex. Crim. App.
1989), overruled on other grounds, Zimmerman v. State, 860 S.W.2d 89, 94 (Tex.
Crim. App. 1993). Under the totality of the circumstances, waiver may be established
even when the waiver is not explicitly stated. Id. at 41. A defendant’s waiver of his
right to an attorney may be inferred from his actions and words. Id.
          Article 38.23 reads, in pertinent part:
(a)no evidence obtained by an officer or other person in violation of
any provisions of the Constitution or laws of the State of Texas, or
of the Constitution or laws of the United States of America, shall
be admitted in evidence against the accused on the trial of any
criminal case. 
 
Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005).
          Appellant argues that, because, during the interview with Officer Gans,
appellant requested a lawyer, the State had to show that appellant knowingly,
intelligently, and voluntarily waived his right to a lawyer before Gans proceeded with
the interview. Appellant also argues that Detective Binford “had no right to initiate
another interview with the appellant once he had invoked his right to counsel, because
Officer Gans ha[d] not re-established that right was voluntarily waived when he
continued making the first statements.” We disagree.
          During trial, Officer Gans explained why he turned the tape recorder off while
recording appellant’s statement as follows:
Judge, um, before offering Mr. Lockett a chance to talk to us on video,
I, at that time, read him his [legal rights], gave him the [legal rights]. 
Um, read to him that he had the right to remain silent. He listened to all
the – of the [legal rights]. And afterwards, I asked him if he understood
it and if he was willing to talk on. And, um, he wasn’t. He said – he
said, well, can I have a lawyer? Can I have a lawyer now?
 
I said, yeah. I mean, we can stop this, you know, that’s it. You won’t be
interviewed again until you get an attorney, if you don’t want to give us
a statement. So, um, I stopped the tape at that time. I think it’s on
videotape. I said, we’re going to stop the tape at this time, the defendant
does not want to give a statement. But when I turned the videotape off,
I said, okay, let’s go. You know, he was, well, wait a minute, wait a
minute, I do want to talk, man. Yeah, I do want to go ahead and say
something. So, I turned the videotape back on and Mr. Lockett began
talking.
 
Officer Gans testified that the videotape is “time-stamped” and reflects that the video
camera was only turned off for a “few seconds” before it was turned back on and
appellant resumed giving his statement. 
          The trial court entered findings of fact and conclusions of law regarding the
voluntariness of appellant’s statement. The trial court found that appellant had waived
his legal rights as required by article 38.22. The record reflects that appellant was
repeatedly advised of his right to an attorney, and, as the trial court’s findings of fact
indicate, “at one point during the questioning Gans turn[ed] off the video recorder
when the defendant became uncertain if he wanted to invoke his right to counsel. 
When the defendant insisted on giving a statement, and waiving his rights, Gans then
restarted the video recording equipment.”
          Accordingly, we hold that the trial court did not abuse its discretion when it
denied appellant’s motion to suppress his statements after it found that appellant
voluntarily waived his legal rights. 
          We overrule points of error three and four. 
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        George C. Hanks, Jr.
                                                                        Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Hanks.
 
Do not publish. Tex. R. App. P. 47.2(b).