ROBERT FRANKLIN V. THE STATE.

No. 20368. Delivered April 19, 1939.
Rehearing Denied May 24, 1939.

The opinion states the case.

*W. J. Alexander*, of Caldwell, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.

The offense is murder; the punishment, confinement in the penitentiary for 45 years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Minnie Nelson by shooting her with a pistol.

The homicide occurred on the 16th of April, 1938, at a beer tavern which deceased and her husband operated. Appellant had been living with them in the tavern for some time. Shortly before the homicide Tommie Dell had informed C. H. Houston, a constable that appellant was at the tavern armed with a pistol. After being thus informed the officer went to the tavern for the purpose of arresting appellant. Upon making a search, he found appellant's pistol in a boot under a machine. At this juncture we quote from the officer's testimony, as follows: "As I reached down to pick it up he (appellant) grabbed me and my gun and that other gun too. I did not have my gun in my hand, but I ought to have had it in my hand. I had it in my scabbard. He grabbed me and grabbed my gun, and me and this boy (appellant) and the negro woman (deceased) scuffled. The negro woman was in the room. She wasn't in that room when I got there; she was in the beer parlor, and when I went in there and went to search, she came in there. She was in there when I shook this gun out of the boot and when this fracas took place between me and the defendant; we all three scuffled over my gun. I was trying to get my gun away from him, and he finally wrenched it out of my hand and grabbed my finger with his teeth and chewed my finger. Then he broke away from me and on the way out he shot this negro woman (deceased). He was running toward the front of the house." The officer testified, further, that before he and appellant had quit scuffling deceased went into another room. Again, we quote from his testimony: "At the time this defendant shot Minnie Nelson, she wasn't armed in any way, that I know of. She wasn't making any advance toward him to injure him. I guess he was about three or four steps from me when he shot her. I didn't have ahold of him in any way, and she didn't have ahold of him. I guess she was about two steps from him when he shot her. Right around there. I was in the room down there at the hall, and during the scuffle she left the room, and then he got possession of his gun and my gun and turned to start out, and as he turned to start out he met her in the door, and kept going. He didn't say a thing on earth at the time. He never said a word "

Appellant had possession of both pistols at the time he

fired the fatal shot. The wound took effect in the stomach of deceased. A physician who attended her shortly after the shooting said: "From my medical experience, she died from the wound she received at the time just prior to my treating her. The immediate cause of her death was peritonitis, that is, blood poisoning, in other words."

Appellant did not testify and introduced no witnesses.

Appellant contends that the court should have instructed the jury upon his right to resist an illegal arrest and search, notwithstanding he neither excepted to the charge nor presented a requested instruction covering the subject. If appellant believed the testimony raised the issue he should have excepted to the charge or presented a requested instruction covering the subject. Be that as it may, we are constrained to hold that the issue is not in the case. Although deceased had endeavored to aid the officer at the time the constable was seeking to disarm appellant, she had left the room and was making no effort to detain appellant or assist in arresting him at the time she was shot. The officer had been overpowered and appellant had possessed himself of both pistols.

Appellant insists that it was reversible error for the court to fail to submit his requested instruction covering the subject of death resulting from improper treatment. It is the rule that "if there is evidence of improper treatment of deceased by a physician or other attendant, the court should charge affirmatively on this theory." Branch's Ann. Texas P. C., sec. 1859. Further, it is the rule that "if a wound causes a disease which produces death and there is no evidence of gross neglect or improper treatment, the death is imputable to the wound." Branch's Ann. Texas P. C., sec. 1859. We are of opinion that the evidence failed to raise the issue. It is true that the attending physician testified that deceased lived about ten days after she had been shot, and that he attended her only one time, which was the day she was wounded. However, he said: "The bullet went through the abdominal cavity." Again, he testified that deceased died from the wound she received. Also, it is true that his testimony was to the effect that persons who had received wounds in the same region as deceased recovered under proper treatment. He said: "I gave this woman only that first aid treatment— that's all." There is no proof in the record from any source which, in our opinion, tends to raise the issue that deceased may have died from some other cause than the infliction of the wound. All that we find is shown in the testimony of the physician to which we have referred.

We quote from Outley v. State, 99 S. W. 95, as follows: "All that we find in this connection is that appellant's testimony suggested that deceased lived some seven or eight days after the infliction of the wound; that he seemed to be doing well; that on the evening before he was improving; that he had physicians to care for him; and that defendant himself looked after him. On the night prior to his death, he heard a noise, and went where deceased was, and found that he had fallen off the bed, or fallen down—but it is not shown whether he fell from the bed or not. He found him lying down between the bed and the dresser. No wounds or injuries are shown as a result of this. So, in the absence of proof, we cannot assume that any injury was inflicted by this cause. But the death must be attributable to the cause shown in the evidence, and the cause as testified to by the physicians—that is, an infection, which, we take it, means blood poisoning from the wound, either from some foreign substance or from the wound itself, regardless of any foreign substance. Therefore we hold that the court did not err in failing to charge on this subject"

Also, we quote from Wood v. State, 21 S. W. 602, as follows: "The court did not err in failing to charge upon the possibility that the death of deceased may have been due to some other cause; some physicians having testified that such wounds are not necessarily mortal, while those in attendance say this wound was mortal, and was correctly treated. There is no testimony suggesting any other cause, or calling for any such charge. Courts ought not to charge on remote possibilities. There was no exception taken to the charge on account of said failure, and no injury perceptible therefrom."

Appellant contends that the court committed error in overruling his exception to the charge for its failure to instruct the jury that before he could be guilty of murder he must have entertained the intent to kill deceased. We are constrained to overrule this contention. The weapon used by appellant was per se deadly. He intentionally shot deceased in the abdomen with a pistol. The law presumed under such circumstances an intent to kill. Myatt v. State, 26 S. W. (2d) 915; Hadnot v. State, 7 S. W. (2d) 566; Collins v. State, 299 S. W. 403. In Rodriquez v. State, 19 S. W. (2d) 47, after citing Collins v. State, supra, and Hadnot v. State, supra, we said: "These cases will sufficiently illustrate the principle that, though an intent to kill must be present, such intent may or not be an issue to be submitted to the jury, depending upon the facts of each case."

Appellant's contention that the issue of aggravated assault is in the case cannot be sustained. See Myatt v. State, supra.

We deem the evidence sufficient to support the conviction for murder with malice.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

In his motion appellant complains on account of the asking of the question of the deceased's husband which would have evidenced the fact that deceased's husband told appellant to "stay away from there," evidently meaning the home of the witness and the deceased. This question was not answered, although the State's attorney stated to the court that the witness would have so testified. The question, however, was withdrawn, and the court also instructed the jury to disregard such question, the objection going to the asking of the question and remarks relative thereto. Under the circumstances of this case we do not think the asking of this question, and the statement of the district attorney that he expected to prove that appellant had been told to "stay away from there," could have resulted in any serious injury to appellant's case  Evidently appellant was not wanted at such place, and his conduct relative to his pistol had been called to the officers' attention, and such is shown by the testimony, and we overrule this bill No. 1, which was not noticed in the original opinion.

Appellant further complains because of the court's failure to instruct the jury on supervening cause, as set forth in his bill No. 4. The court is only required to charge the law as the same should be applied to the facts shown on the trial of the case. In addition to what we have said in our oginial opinion relative to this bill, there is nothing in the record to show that the deceased did not receive other and further treatment relative to this wound in her abdominal cavity, and while she may not have received such additional treatment, if supervening cause is relied upon as a defense, such should have been based upon some testimony or reason showing same. There is none shown herein, and such should not have been charged upon. Neither do we think that the facts called for a

charge upon an aggravated assault, as was suggested in bill No. 5.

We adhere to the views expressed in our original opinion herein, and overrule the motion for a rehearing.