GAITHER LOVELADY *alias* RED LOVELADY v. THE STATE.

No. 23420. Delivered June 26, 1946.
Rehearing Denied January 8, 1947.

*W. S. Foster, John N. Gauntt,* and *Howard Walden,* all of Waco, and *Frederick G. Harmon,* of De Leon, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State

GRAVES, Judge.

Appellant was charged with the unlawful killing, with malice, of John Brewer, and by the jury assessed the penalty of death.

On the night of December 15, 1945, Mr. Sanders drove home to Lexington, and as he was passing the jail there he saw Mr. Brewer, who was coming towards him with a gun in his right hand and was waving his left hand; when he got to the car Mr. Brewer, who was a night watchman and city marshal, told witness that he was shot; that appellant shot him; that he got appellant's gun, and witness then heard a noise and looked and saw appellant some distance away. Immediately Mr. Sanders and another, Mr. Locklin, carried the deceased to a nearby drug store, the deceased telling them to lay him down; that he could go no further; that he was dying, and repeating that appellant shot him, and this was appellant's pistol, in which was found four exploded shells and two unexploded cartridges.

The deceased was immediately taken to Fred Morris' drug store, and the deceased there said: "I was trying to put him in jail. * * * I knocked the first two (shots) off, but he hit me with the third one." From the drug store deceased was taken to a hospital in Cameron, where he died some few days later from the result of this wound, having a bullet hole through his body.

It is in evidence that appellant had been drinking on the night of the homicide, and that Mr. Brewer had seen him in such condition a short time before the shooting.

Appellant filed a motion for a change of venue, alleging therein that there was so great a prejudice against him that he could not obtain a fair trial in Lee County. This was supported by the affidavit of two compurgators; the State filed a controverting motion, alleging the lack of knowledge of these compurgators, and further denying that there was any sentiment against appellant; that the citizenship of the county were only interested in seeing that a fair trial was had both to the State and the defendant.

Without going into the testimony introduced relative to the

change of venue, it seems plain to us that the State not only refuted the affidavit of the two compurgators, but showed by the testimony that there was no prejudgment of appellant's case, and that he could obtain a fair trial in Lee County. Neither side exhausted its peremptory challenges, and only 72 jurors were interrogated, leaving 16 jurors not called; some jurors disqualified as to the death penalty, and some from Lexington, the scene of the homicide disqualified. We do not think the court erred in overruling the motion for a change of venue.

Bill No. 2 relates to the refusal of the trial court to give a peremptory instruction of not guilty. This was properly overruled.

Bill of exceptions No. 3 complains of the admission of the testimony of Erhard Sanders wherein he testified, in substance, that as he was passing near the jail in Lexington he saw the deceased who waived at him, having a pistol in his hand, and Sanders stopped and got out of his car, and "he (the deceased) told me that a negro," the bill going no further, but refers us to the statement of facts in order for us to ascertain what the objectionable testimony was. This bill also contains a further statement of the witness Weldon Locklin as follows:

"When I joined Erhard Sanders and Mr. Brewer, well, it was down at the end of that street; it was back behind Mr. Peebles' store, at the end of his store. When he got up there about half-way to the drug store, Mr. Brewer said Red Lovelady shot him and he was going to die and asked us to lay him down. He wanted us to lay him down on the highway. We kept going with him and carried him to Fred Morris' drug store."

This bill is duplicitous; does not contain the substance of the objected to testimony of Sanders, and it is shown from the court's qualification thereto that no objection was made to the testimony of Mr. Locklin. In the first place, we cannot go to the statements of facts to hunt out the objected to testimony; but we do know therefrom that Locklin testified in substance to the same main facts as Sanders, and no objection was registered to Locklin's testimony. Under the doctrine that where similar testimony goes in without objection, there is no error in the complained of testimony. We overrule this bill. See Countee v. State, 44 S. W. (2d) 994; McLaughlin v. State, 4 S. W. (2d) 54; Flower v. State, 18 S. W. (2d) 659.

Bill No. 4 arose by reason of the fact that appellant filed a motion for a suspension of sentence, and the State's attorney

asking a character witness, Mr. Warren, if he knew about appellant chasing a negro by the name of Williams across town in 1941 with a piece of pipe, to which the witness answered no. Again he was asked did he know about appellant going to a constable and telling him he was going to kill him. (No answer is shown in the bill).

In the court's qualification to this bill it is shown that the witness had previously been asked by appellant's attorney "whether he would know it, if the defendant had done anything?" In cross-examination thereof Mr. Warren further stated: "I don't know about him hitting a negro by the name of Stafford with a plank in 1941; I didn't know about him carrying a pistol around town; I didn't know that he carried a pistol." Whereupon the district attorney said: "You didn't know that? You wouldn't consider a man that carried a pistol—" whereupon the court sustained an objection, and no further answer was made. This matter seems to have been invited by appellant's attorney questioning Mr. Warren.

Bill No. 5 relates to an attempt upon the part of the State to introduce in evidence some of the clothing of the deceased, being the coat and overcoat. This was objected to by appellant's attorney, and a further objection was made in said bill to the trial court permitting such clothing to remain in sight of the jury during the trial. It is shown that in an effort to show the course of the bullet that went into the body of deceased, the district attorney offered to introduce this clothing, and upon objection that there was no controversy relative to the man being killed, the district attorney abandoned such effort and the clothing were returned to the place from which they were taken, and there was no evidence of them being soiled. They were not shown to have been bloody clothing, and were probably admissible to show what position deceased was in when he was shot.

Bill No. 6 relates to the following occurrence: While the jury was out deliberating on their verdict they requested to be brought before the court for further instructions. The court, in the presence of appellant and his attorneys, and the State's attorneys, had them brought into court, and the foreman of the jury propounded the following question orally to the court: "Have you a special form for the verdict?" to which the court replied: "I will have to give you your instruction in writing," which was done, and no objection taken thereto, such charge appearing in the record being but a form for a verdict of not guilty and a further form for one of guilty, leaving the penalty

blank, as well as a form for a suspended sentence. No objection was made to this proceeding. The jury retired and again returned with the following verdict written on the back of the indictment: "We the jury find the defendant guilty, and the penalty shall be death in the electric chair," whereupon the jury was requested to be polled by defendant's attorney, at which time the district attorney asked the jury if he could make a slight change in the reading of the verdict, which was changed to read: "We the jury find the defendant guilty and assess his punishment at death in the electric chair," to which the jury assented, the jury polled, and no objection was made nor exception taken thereto.

We think the court was correct in furnishing the jury with a form for their verdict, taking care to furnish a form for every verdict that they could render. See Branch's P. C., p. 335, Sec. 657, and authorities there cited. The court also had the right to correct an informal verdict with the consent of the jury before they were disharged. See Branch's P. C., p. 333, Sec. 651.

Bill of exceptions No. 7 does not seem to offer any error, it merely relating to the number of speeches made by attorneys for the State. There also appears in said bill certain remarks alleged to have been made to the jury by an attorney for the State. As this bill is qualified by the trial court, we see no error presented therein.

Bill No. 8 relates to the trial court overruling appellant's motion for a new trial, and is but an argument thereon and conclusions drawn therefrom as to why the motion for a new trial should be granted. It is overruled.

The careful trial court gave a comprehensive charge on all the phases of the law arising from the proven facts herein. He gave a requested charge on drunkenness as well as a further requested charge on circumstantial evidence, they being all the special charges requested, and there are no objections or exceptions to the charge found in the record.

Appellant took the witness stand but was interrogated by his attorneys only relative to his suspended sentence. The State prudently perhaps failed to ask him any question, and no self-defense nor justification being shown, we think the jury had a right to say that this was a killing on malice, actuated by a heart regardless of social duty and fatally bent on mischief.

We find no error in the record, and the judgment will therebe affirmed.

## ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant for the first time suggests, in his motion for rehearing, that the change of venue should have been granted because "racial discrimination was involved in this cause."

We note in the application for change of venue the following allegation, viz.:

"The fact that the defendant is a negro and the deceased whom the defendant is charged with killing is a white man, and former peace officer, obtaining his position through popular selection of the people of the community in which they resided, would tend to prejudice the jurymen in this county in which this officer lost his life, in favor of the white man against the negro."

We find no facts sustaining this allegation other than that appellant was a negro and the deceased a white man and peace officer.

To hold, under such circumstances, that prejudice existed against appellant by reason of his race would be tantamount to saying that proof merely that the the accused is a negro and the deceased a white peace officer constitutes proof of the existence of race prejudice. This we are unwilling to do. Race prejudice is, therefore, not shown.

Appellant insists that the facts evidence only an unexplained killing, with no motive or malice shown, and that, by reason thereof, the death penalty was not authorized.

A showing of motive, premeditation, or previously-formed design to kill is not required to support a conviction for murder with malice. Parks v. State, 131 Tex. Cr. R. 464, 99 S. W. (2d) 943; Ely v. State, 139 Tex. Cr. R. 520, 141 S. W. (2d) 626.

Degrees of the crime of murder do not exist under our present statute (Art. 1256-1258, P. C.). Every intentional killing without justification or excuse is murder. The issue of malice arises only as to the question of punishment. Mosley v. State, 196 S. W. (2d) 822.

The intended shooting of one with a pistol is sufficient to authorize the jury to conclude that the shooting was activated by malice. Franklin v. State, 137 Tex. Cr. R. 136, 128 S. W. (2d) 389.

Under the facts here presented, the jury was authorized to conclude that the shooting of the deceased was with malice. The punishment, then, was one exclusively within the province of the jury.

On account of the penalty here inflicted, we have again reviewed the entire record. We remain of the opinion that the conclusions expressed in our original opinion are correct. No useful purpose would be served to again re-state them here.

No reversible error appearing, the motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.