Billy STANLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 43907.

Court of Criminal Appeals of Texas.

July 28, 1971.

Rehearing Denied Oct. 20, 1971.

The indictment alleged that on September 16, 1969, the appellant did voluntarily and with malice aforethought kill Linda Magers Stanley by striking her with his fists and kicking her with his feet. The record reflects that the deceased was the wife of the appellant.

The sufficiency of the evidence is challenged.

David Leon Stanley was the appellant's 13-year-old nephew, the son of the appellant's brother. He testified that on September 16, 1969, at his home on Route 4, McKinney, Texas, he witnessed the appellant severely beat the deceased. Neither of his parents were at home at the time. The appellant and the deceased had been living in the house for about a week, sleeping in one of the bedrooms. When the deceased first came to the house, David Stanley observed that there were bruises on her face and arms, that her face was swollen and that she had several teeth missing. She stayed in bed most of the time and could only eat Jello.

David Stanley further testified that about 2:30 in the afternoon in question he saw the appellant and the deceased in the bedroom in which they were staying. They were having a conversation and then he observed the appellant begin to beat the deceased with his fists. Portions of his testimony are as follows:

"A Well, after he hit her he started accusing her of getting up and running around with other men, you know.

"Q And what did she say about that?

"A She said she didn't do it.

"Q And then what, if anything, did this defendant do?

"A He hit her again."

The appellant was standing up and the deceased was lying on the bed. He beat her for about five minutes, then picked her up and slammed her on the floor, and then went into the kitchen and drank some cof-

James R. Caton, Cleatus M. Phelan, McKinney, for appellant.

Tom Ryan, County Atty., Tom O'Connell, Asst. County Atty., McKinney, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for murder with malice; the jury assessed the punishment at death.

fee. He then went back into the bedroom and "grabbed the deceased by the hair of the head and pulled her off the bed." She was then lying on the floor and the appellant was kicking her. Then "He got down on his knees and started hitting her." After beating her for about 10 minutes, he went into the bathroom and shaved, and then went into the kitchen and drank another cup of coffee and then went back into the bedroom and beat her again. After the first beating, the appellant broke her jaw and said, "I ought to hit the other side and make it come up." He then hit her on the other jaw.

After the third beating, the appellant and the witness David Stanley dressed the deceased and put her in the car. The appellant then drove off with the deceased inside the car. While they were still in the house the appellant wiped the forehead of the deceased with a wash cloth, gave her mouth-to-mouth resuscitation, and asked her to talk to him. They left the house at 5 o'clock p. m.

Brenda Joyce Magers, 19, was the younger sister of the deceased, who was 21. She testified that the deceased and the appellant were married on August 18, 1969, and that her sister was 5 feet, 2 inches tall, and weighed 85 pounds.

She testified that on the afternoon in question the appellant arrived at her house with the deceased and told her to call an ambulance and said, "Someone is dying." The deceased's face was black and blue and there was blood inside her mouth. The ambulance arrived and took her to a hospital.

The autopsy disclosed that the deceased had extensive bruising of the brain and extensive hemorrhage about the brain, her right lung had collapsed, her kidney was severely hemorrhaged, and her liver had a large laceration. Any one of those injuries could have resulted in death. The chief cause of death was severe internal bleeding.

The appellant testified that he and the deceased had spent three nights at his brother's house when the death occurred. He testified that he only administered one beating to the deceased and did not beat her before he drank the coffee in the kitchen. Other portions of his testimony were as follows:

"Q All right. Will you tell us what happened during the first argument?

"A We were arguing about her getting up and going in the room where my brother was.

 * * * * * *

"Q All right. When you argued with her about this, did she admit it or deny it?

"A She denied it.

 * * * * * *

"Q Did you, as David said, accuse her of going with other men?

"A Yes, I did.

"Q Did she admit any of it?

"A She said she had only went with her brother-in-law.

"Q Was this before or after your marriage?

"A She said before.

"A Did she at that time ever admit anything with Jasper?

"A Not at that time.

 * * * * * *

"Q (by Mr. Caton—Defendant's Counsel) After you talked to David where did you go?

"A I went back into the room where she was.

"Q What happened?

"A Well, I asked her again, after I had talked to David, if she had been in there with my brother or where my brother was at, or with my brother, and she said she had.

"MR. RYAN: I didn't understand that last answer, Your Honor. She said what?

"A She said yes.

"Q (by Mr. Caton) Did she tell you that anything happened?

"A She said something happened.

"Q What happened?

"A She said she went to bed with him.

"Q And what did you do?

"A Well, I—I don't know for sure.

"Q Sir?

"A I don't know for sure what I did.

"Q You heard David testify what you did. Is that true?

"A Well, I don't know for sure what all I did. I just—I got mad. I know I hit her. I know I hit her in the jaw."

And on cross-examination—

"A. Well, I can't remember just exactly.

We got in an argument about her brother-in-law.

\* \* \* \* \* \*

"A I told my lawyer when I went back in there that she told me that—she told me that she was in bed with my brother.

\* \* \* \* \* \*

"A She told me she went to bed with my brother and I just—I don't know. I know I hit her. I don't know how many times I hit her."

He further testified that it was not his intention to kill his wife.

It is appellant's contention that the evidence is insufficient as to intent to kill and as to malice aforethought.

"If the jury had any evidence from which they might find an intention to kill, their finding would be binding on this court. An utterance made by the appellant, the relative size and strength of the parties, the manner of the attack and the extent to which it was carried are all proper factors for consideration." Sadler v. State, Tex.Cr.App., 364 S.W.2d 234; McDonough v. State, 147 Tex.Cr.R. 111, 178 S.W.2d 863.

■ The facts of this case are amply sufficient for the jury to find an intent to kill, especially since there was evidence that the appellant severely beat the deceased on three distinct occasions.

■ Likewise, there is sufficient evidence for the jury to find malice. Malice is a question of fact, inferable from the circumstances, and is usually one for the jury. Muckleroy v. State, 165 Tex.Cr.R. 629, 310 S.W.2d 315. Malice in the legal sense "does not have its popular meaning of hatred, ill will, or hostility towards another, but includes all of those states of mind in which a killing takes place without any cause which will in law justify, excuse, or extenuate the act. It may exist without any former grudge or antecedent menace. \* \* \* The question of time is not always a necessary ingredient forming the circumstances, as it may be of such short duration as to be incapable of measurement." Harvey v. State, 150 Tex.Cr.R. 332, 201 S.W.2d 42. See: Boatwright v. State, 169 Tex.Cr.R. 280, 343 S.W.2d 707. The court submitted a charge to the jury on the law of murder without malice and the jury resolved this fact question against the appellant. "Where controverted issues are raised by the appellant's testimony, and the jury returns a verdict of guilty, such issues pass out of the case with the jury's verdict." Isaac v. State, Tex.Cr.App., 468 S.W.2d 855.

Considering especially the State's evidence as to the viciousness of the beatings, the evidence is sufficient to show malice.

The appellant's first ground of error is overruled.

■ The appellant's second ground of error complains of the trial court's refusal

to admit certain testimony of the appellant's brother, Jasper Stanley, who had been called by the appellant. The bill of exceptions showed that the witness would have testified to the following: (1) he did not contest the change of custody of his son, David, (2) he was aware that an issue might arise concerning him and the deceased, (3) he left the county and avoided the appellant's counsel, and, (4) he did not talk to the deceased on the day of her death, but had talked to her on the night before. Contrary to the appellant's assertion in his brief, there is no mention in the bill of exceptions concerning an illicit affair between this witness and the deceased. Therefore, the exclusion of his testimony on that matter is not presented for this Court for review. Thomas v. State, Tex. Cr.App., 438 S.W.2d 112, and authorities there cited.

 The testimony concerning custody of the witness's child is clearly irrelevant. And the witness's denial that he talked to the deceased on the morning in question in fact contradicted the testimony of the appellant as to why he beat the deceased and the exclusion of that evidence in no way prejudiced the appellant. The only testimony admitted was in response to preliminary or irrelevant questions. Thus, any evidence either that the appellant was aware that an issue concerning him and the deceased might arise or that he left the county and secreted himself, or that he appeared involuntarily, is immaterial.

The appellant's second ground of error is overruled.

The appellant's third ground of error complains because the trial court failed to charge the jury on the issue of the appellant's sanity at the time of the alleged offense. The appellant filed his objection to the charge, and the objection was overruled.

Art. 46.02, Sec. 2(c) (1) states:

"(c) When the issue of insanity as of the time of the alleged offense is tried, the following rules shall apply:

(1) The issue of insanity as of the time of the alleged offense shall be submitted to the jury only if supported by competent evidence tending to show that defendant was insane as of the time of the alleged offense."

In Fuller v. State, 423 S.W.2d 924, this Court stated:

"Every person is presumed to be sane (in absence of an unvacated judgment of insanity) and to have sufficient judgment and reason to be responsible for his acts until the contrary is established. It is by reason of this presumption that the law casts upon one relying on insanity as a defense to a crime the burden of establishing by a preponderance of the evidence that his intellect was so disordered that he did not know the nature and quality of the act he was doing, or if he did know that he was unable to distinguish between the right and wrong as to the particular act charged. Wenck v. State, 156 Tex.Cr.R. 50, 238 S.W.2d 793; Ross v. State, 153 Tex.Cr.R. 312, 220 S.W.2d 137.

\* \* \* \* \* \*

"If, however, the issue of insanity at the time of the offense is not raised by the evidence, the trial court does not err in failing to instruct the jury upon the law of insanity as a defense. Morris v. State, Tex.Cr.App., 382 S.W.2d 259."

 In this case, there was no testimony that the appellant was insane or of unsound mind on the date of the alleged offense, or that at such time he was not capable of understanding right from wrong.

 On cross-examination by appellant's counsel, David Stanley testified that the appellant acted like a "maniac" and like he was "crazy." That testimony by itself is neither evidence of mental illness nor insanity. There was, however, competent

medical testimony offered by the appellant that appellant knew the difference between right and wrong and the nature and consequence of his act; that appellant had a sociopathic personality and was "mentally ill" at the time he was examined.

In Ex parte Hodges, 166 Tex.Cr.R. 433, 314 S.W.2d 581, this Court said:

"It is well settled that an accused may be mentally ill or of unsound mind and yet be legally sane. The test is not whether he is of unsound mind or mentally ill, but whether he is rendered incompetent to make a rational defense thereby, and whether he is laboring under such defect of reason from disease of the mind as not to know the nature or quality of his otherwise criminal act, or if he does know, is unable to distinguish between right and wrong as to such act."

Nowhere in the record is there any evidence that the appellant was insane. Conversely, there was expert testimony that he was sane. The court did not err in refusing to charge on insanity.

The appellant's third ground of error is overruled.

■ The appellant's fourth and fifth grounds of error contend that the State failed to prove that the offense occurred in Collin County.

The evidence showed that the offense occurred at the home of David Stanley, which was located on Route 4, McKinney, Texas, on Chambersville Road. The evidence further showed that the appellant took the deceased to her sister's home in McKinney. Deputy sheriff Ben Morris testified that he was familiar with Chambersville Road and that the road was located in Collin County.

"Venue need not be proved beyond a reasonable doubt and may be proved by circumstantial as well as direct evidence. It is sufficient, if from the evidence, the jury may reasonably conclude that the offense was committed in the county alleged."

Curtis v. State, 167 Tex.Cr.R. 536, 321 S.W.2d 587. Venue need only be proved by a perponderance of the evidence. Phillips v. State, Tex.Cr.App., 459 S.W.2d 632. The preponderance of the evidence in this case clearly shows that the offense was committed in Collin County.

The appellant's fourth and fifth grounds of error are overruled.

There being no reversible error, the judgment is affirmed.

ODOM, J., not participating.